[Crim. No. 381. Department One.—September 20, 1898.]

THE PEOPLE, Respondent, v. MANUEL CHAVES, Appellant.

JUSTICE OF THE PEACE—VACANCY IN ELECTIVE OFFICE—COUNTY GOVERNMENT ACT—CONSTITUTIONAL LAW.—The provisions of the County Government Act of 1893, authorizing boards of supervisors to fill by appointment the office of justice of the peace when vacant, are not in conflict with the provisions of the constitution making the office an elective one.

ID.—NEW TOWNSHIP—VACANCY—APPOINTMENT BY SUPERVISORS.— The board of supervisors has power to appoint a justice of the peace for a new township created by them under the County Government Act, to fill a vacancy in the newly created office, which became vacant on the instant of its creation as an existing office without an incumbent.

ID.—RIGHT AND DUTY TO HOLD OVER—FAILURE OF ELECTION.—A justice of the peace, properly appointed for a new township, has the right, and it is his duty, to hold over, as an incumbent of the office *de jure*, until his successor is elected and qualified. The failure to elect his successor at the first general election following his appointment cannot deprive him of his right to act.

CRIMINAL LAW—HOMICIDE—PRELIMINARY EXAMINATION—JURISDIC-
TION OF JUSTICE OF THE PEACE—INFORMATION.—An information
charging the crime of murder cannot be set aside as invalid for
want of jurisdiction in a justice of the peace to hold the pre-
liminary examination, on the ground that he had been appoint-
ed by the supervisors for a new township created by them, and
had held over after failure to elect his successor.

ID.—TRIAL—SEPARATION OF JURORS—DISCRETION—CONSTITUTIONAL
LAW.—The court has discretion to permit a separation of the
jurors in a criminal case, during the impaneling of the jury and
the subsequent progress of the trial, after properly admonishing
them, without the consent of the defendant or his counsel.  Sec-
tion 1121 of the Penal Code, conferring such discretion, is not in
violation of section 7 of article I of the constitution, securing
the right of trial by jury.

ID.—INSTRUCTION REQUESTED—CHARGE OF COURT.—Instructions re-
quested upon propositions substantially embodied in the charge
of the court may properly be refused.

ID.—INAPPLICABLE INSTRUCTION AS TO MANSLAUGHTER.—When it
clearly appears from the evidence that the defendant, if guilty
at all, was guilty of murder of the first or second degree, a re-
quested instruction relating to the crime of manslaughter should
not be given.

ID.—HARMLESS INTRODUCTION TO CHARGE.—Preliminary statements
in a charge to the jury, by way of introduction, commending the
attention of the jury, et cetera, and referring to the provisions
of the law for securing a fair trial, et cetera, such as are not
uncommon, and could not have operated to the prejudice of the
defendant, are not ground of reversal.

ID.—DEFINING DEGREES OF MURDER—USE OF LANGUAGE OF CODE.—
It is proper for the court to use the language of the Penal Code
in defining the degrees of murder; and the fact that such lan-
guage refers to instances of murder in the first degree, to which
the evidence does not apply, cannot prejudice the defendant.

ID.—INSTRUCTION AS TO VERDICT—JUDGMENT OF JURY.—An instruc-
tion, under an information for murder, that "the jury may con-
vict the defendant of murder of the first degree, murder of the
second degree, or aquit him altogether, as in your judgment the
evidence may warrant, in view of the law as given you by the
court," is not misleading, or subject to valid objection, for the
use of the words "as in your judgment the evidence may war-
rant."

ID.—PRESUMPTION OF INNOCENCE—REASONABLE DOUBT.—An instruc-
tion as to the presumption of innocence, and as to reasonable
doubt, given in the language of section 1096 of the Penal Code,
to which the court added that such presumption goes with the
defendant all through the case and operates in his favor until
a verdict is arrived at, and also stated what is a reasonable
doubt in language approved many times by this court, fully and
clearly states the law upon those subjects.

ID.—READING FORMS OF VERDICT.—The court may read to the jury the different forms of verdict possible to be used by them under a charge of murder, before handing them to the jury at the close of the charge; and it is not objectionable that the form first read was that of conviction of murder in the first degree, and fixing the death penalty, and the form last read that of finding the defendant not guilty.

ID.—EVIDENCE—PREVIOUS QUARREL AND ASSAULT.—Evidence showing that the defendant and the woman killed by him, while living together, had quarreled, resulting in her leaving him and fleeing to a neighbor's house for protection, and that he had followed her and attempted a murderous assault upon her, and had threatened her when his assault was frustrated, is admissible, as tending to show malice and illwill on his part, and a motive for the murder committed a few days later.

ID.—THREATS AGAINST LIFE.—Evidence of threats made by the defendant against the life of the deceased prior to the murder is admissible, as tending to show malice.

ID.—CONFESSIONS.—Confessions made by the defendant are admissible, if the proper foundation for the introduction of such evidence is laid.

ID.—MOTION IN ARREST OF JUDGMENT.—A motion in arrest of judgment can only be founded on defects appearing upon the face of the information or indictment, and cannot be made for want of a legal commitment before the filing of the information.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. E. S. Torrance, Judge.

The facts are stated in the opinion.

Omar Bushnell, for Appellant.

W. F. Fitzgerald, Attorney General, and W. H. Anderson, Assistant Attorney General, for Respondent.

BELCHER, C.—The defendant was charged by information with the crime of murder, committed on the fourteenth day of May, 1897, in the county of San Diego, by willfully, unlawfully, and feloniously killing a woman named Gregoria Rodrigues. When arraigned he moved the court to set aside the information upon the ground that before the filing thereof he had not been legally committed by a magistrate, and the motion was denied. He then demurred to the information, and his demurrer was overruled, and thereupon he pleaded not guilty.

He was afterward tried and the verdict returned was: "We, the jury in the above-entitled cause, do find the defendant guilty of murder of the first degree, as charged in the information, and in our judgment he should be punished by the infliction of the death penalty." He moved for a new trial and in arrest of judgment, and, both of these motions being denied, judgment was entered that he be hanged at San Quentin.

From that judgment and the order denying his motion for a new trial this appeal is prosecuted.

1. It appears from the bill of exceptions that the preliminary examination of defendant was had before one Walter B. Ferguson, who styled himself "justice of the peace, Picacho township, county of San Diego." The order of commitment was signed by Ferguson as such justice of the peace, and dated May 25, 1897.

It further appears that on February 4, 1896, the board of supervisors of San Diego county, upon petition of certain citizens, and by proceedings regularly taken, formed or created the "Picacho judicial township" in said county, and appointed Walter B. Ferguson justice of the peace of said township; that thereafter the said appointee duly qualified as such magistrate; that no election for justice of the peace has ever been held in said township; and that said Ferguson was not at the date of his appointment a justice of the peace, elected or appointed to the office in any other township or city in said county, and had not since been elected or appointed a justice of the peace in any other township.

·Upon these facts it is earnestly contended by counsel for appellant that the action of the board of supervisors in appointing Ferguson to the office of justice of the peace was wholly void; that he was not a justice of the peace either *de jure* or *de facto*, and, therefore, defendant had not been legally committed, and his motion to set aside the information should have been granted.

The County Government Act of 1893 (Stats. 1893, p. 346) contains the following provisions:

"Sec. 25. The boards of supervisors, in their respective counties, have jurisdiction and power under such limitations and restrictions as are prescribed by law: . . . . 2. To divide the counties into townships, election, school, road, supervisor, sani-

tary, and other districts required by law, change the same, and create others, as convenience requires: . . . . 21. To fill by appointment all vacancies that may occur in any office filled by the appointment of the board of supervisors and elective county or township officers . . . . the appointee to hold office for the unexpired term."

"Sec. 58. The officers of a township are two justices of the peace, two constables, and such inferior and subordinate officers as may be provided by law or by the board of supervisors; provided, that in townships containing cities in which city justices are elected, there shall be but one justice of the peace. The board of supervisors of each county, on or before the first Monday in September, 1891, and thereafter as public convenience shall require, shall divide their respective counties into townships for the purpose of electing justices of the peace and constables; provided, that the board of supervisors shall have power, whenever they may deem it for the good of their county, to allow only one justice of the peace and one constable in any judicial township having a population of less than three thousand inhabitants."

Under these provisions of the statute it is clear that the board of supervisors was empowered to divide the county into townships for the election of justices of the peace, that is, into judicial townships, and that each of such townships was entitled to have at least one justice of the peace. And it is also clear that when a township was created the office of justice of the peace for the township was created, and was then vacant and to be thereafter filled by appointment or election as provided by law. "An office is vacant, in the eye of the law, whenever it is unoccupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event. A newly created office, which is not filled by the tribunal which created it, becomes vacant on the instant of its creation, an existing office without an incumbent being vacant whether it be a new or an old one." (19 Am. & Eng. Ency. of Law, 431, and see cases cited.)

The office being thus created, with no incumbent to discharge its duties, the question is, How could the vacancy be filled?

This question is clearly answered by subdivision 21, section

25, of the County Government Act, above quoted, and by section 111 of the Code of Civil Procedure, which declares: "If a vacancy occurs in the office of a justice of the peace, the board of supervisors of the county shall appoint an eligible person to hold the office for the remainder of the unexpired term." (*People v. Sands,* 102 Cal. 12.)

The claim that these provisions of the statutes authorizing boards of supervisors to fill by appointment the office of a justice of the peace are unconstitutional, because in conflict with those provisions of the constitution which make that office an elective one, cannot be sustained. "A statute allowing a particular officer or board to fill a vacancy in an office until the next election is not in conflict with a constitutional provision that such office shall be filled by a popular election." (Throop on Public Officers, sec. 433, and cases cited.)

Nor did the fact that no justice of the peace was elected to succeed Ferguson at the first general election following his appointment in any way deprive him of his right to act as such officer. Having been legally appointed to fill that office, it was incumbent upon him to continue to discharge its duties until his successor was elected and had qualified. (Pol. Code, sec. 879.)

Without stating the facts or considering the matter further, we think it sufficiently appears from what has already been said that Ferguson, at the time the defendant was examined and held to answer by him, was not only a *de facto* but a *de jure* justice of the peace in and for the judicial township for which he was appointed. And, this being so, it follows that the court properly denied the motion to set aside the information.

2. While the jury was being impaneled, and during the progress of the trial, the court took a recess several times, and at each of such times, after properly admonishing the jurors, permitted them to separate, without the consent of defendant or his counsel. No objection to the separation was made, but it is now claimed for appellant that it was error for the court to permit the jurors to separate, and that section 1121 of the Penal Code, which authorized the court in its discretion to permit the separations, is unconstitutional because it is inconsistent with that provision of the constitution which declares that: "The right of a trial by jury shall be secured to all, and remain inviolate." (Const., art. I, sec. 7.)

The section of the code referred to is not unconstitutional. It in no way violates or interferes with the right that everyone has to a fair trial by jury. The matter rested in the discretion of the court, and, as no abuse of that discretion appears, its action was justified and proper. (*People v. Ebanks*, 117 Cal. 657.)

3. The court charged the jury very fully, clearly, and correctly upon all the points of law applicable to the facts of the case, and refused to give six instructions requested by defendant. It is claimed for appellant that the court should have given each of the instructions requested by him, and that its refusal to do so was prejudicial error. But all the law stated in the said instructions, in so far as it was applicable and correctly stated, was given in the court's charge; and the rule is settled beyond controversy, by numerous decisions of this court, that the trial court is not bound to repeat itself, and it is not error to refuse to give an instruction which has already been substantially given in its charge or in other instructions.

One of the instructions requested related to the crime of manslaughter. That instruction was properly refused, because, as clearly shown by the evidence, the defendant, if guilty at all, was guilty of murder of the first or second degree; and when such is the case an instruction upon manslaughter should not be given. (*People v. Turley*, 50 Cal. 469; *People v. Lee Gam*, 69 Cal. 552; *People v. Chavez*, 103 Cal. 408.)

Counsel for appellant complains of certain parts of the charge, and says "it is difficult to perceive" what they had to do with the case. The part first referred to is found in an introductory statement in which the court commended the jurors for the careful and patient attention which they had given to the testimony of the witnesses and the arguments of counsel, and said that this was an assurance that their remaining duties would be discharged with conscientious fidelity. The court then said that in this country no man accused of a felony could be put upon his trial without the aid of counsel, or could be convicted, except by the verdict of a jury of twelve disinterested men, chosen from the body of the people of the county; that the law makes ample provision for the selection of jurors who are strictly fair and impartial to try the issue of the guilt or innocence of the

accused; that it can never be justly said that under the judicial system of this country a man is denied a fair and impartial trial, whether he be native born or of foreign birth; and that the court had the fullest confidence that the deliberations of the jury in the juryroom would be conducted with decorum and propriety, and the result thereof would be a just and righteous verdict under the law and evidence in the case.

Similar preliminary statements in charges are not uncommon, and in all that was said by the court in this way we see nothing which could have operated to prejudice the defendant in the minds of the jurors, or which was at all improper.

The next part of the charge objected to is that in regard to the different degrees of murder. In defining the crime of murder, and the two degrees into which it is divided, the court followed the language of the Penal Code. (Pen. Code, secs. 187-89.) It is objected that "There is no evidence of poison, lying in wait, torture, arson, rape, robbery, burglary, or mayhem in the case, nor anything that required explanation why the legislature referred to those matters, or why it had fixed tests for such homicides as occur in connection with such things or those crimes."

This criticism has no merit, and deserves no particular notice. Obviously it was the right and duty of the court to state the law in regard to the offense, and the degrees into which it is divided as declared by the statute, and such statement did not and could not have prejudiced the defendant.

The court charged the jury that: "Under the information in this case the jury may convict the defendant of murder of the first degree, murder of the second degree, or acquit him altogether, as in your judgment the evidence may warrant, in view of the law to be given you by the court." Counsel quotes only the words "as in your judgment the evidence may warrant," and claims that they were such as to mislead the jury, being almost unrestricted in their application to the case. The words quoted, when read in connection with the balance of the instruction, are not misleading and are free from any valid objection.

The court also charged the jury, in the language of the Penal Code (Pen. Code, sec. 1096), that: "A defendant in a criminal action is presumed to be innocent until the contrary is proved,

and in case of a reasonable doubt whether his guilt is satisfactorily shown he is entitled to an acquittal." To this the court added that the presumption of innocence goes with the defendant all through the case and operates in his favor until a verdict is arrived at. The court then proceeded to state what is a reasonable doubt in the language many times quoted and approved by this court. Counsel say "the presumption of innocence is not fully and clearly stated in the words" above quoted, and that "although those portions of the charge may be in the words of the statute they are contradictory and confused, and should not have been given."

Obviously there is nothing in this point, and it may be passed without further notice.

Finally, at the conclusion of its charge, the court read and handed to the jury five forms of verdict, any one of which they might render, stating that they were sufficient to cover every phase of the case under the law and the evidence—the first form finding the defendant guilty of murder of the first degree and that he should be punished by the infliction of the death penalty, and the last form finding the defendant not guilty. It is objected that there was not "anything in the case that made it necessary for the court to read to the jury forms of a verdict, with such forms so arranged and read as to bring the one for murder in the first degree and fixing the death penalty, first to be read; nor should they be read at all, because such reading might convey to the minds of jurors the idea that the court favored a verdict as expressed in the form first read." We see nothing in this point. It must be presumed that the jurors were men of ordinary intelligence, and, if so, the mere order in which the forms of verdict were read could not have conveyed to their minds the idea suggested.

4. Appellant also contends, that the court erred in admitting certain evidence against his objections that it was immaterial, incompetent, and irrelevant. All the questions objected to, which were propounded to Mrs. Ynanes, and the first question objected to which was propounded to Mr. Ynanes, related to what occurred at their house on the night of May 9th. It is said "the subject of the testimony had nothing to do with the killing on the 14th of May, 1897, and did not relate to the crime charged in the information."

In our opinion, the evidence elicited in answer to these questions was clearly material and competent. It showed that defendant and deceased while living together had quarreled, resulting in her leaving him and fleeing to a neighbor's house for protection, in his following her and attempting to make a murderous assault upon her, and in his making threats against her when his assault was frustrated. This tended to show malice and ill-will on his part, and a motive for the murder committed a few days later. Such evidence was admissible. (*People v. Kern,* 61 Cal. 244; *People v. Brown,* 76 Cal. 573.)

The question objected to, which was propounded to the witness Downey, was entirely proper. It elicited evidence of threats made by defendant against the life of deceased prior to the murder. Such evidence was admissible as tending to show malice. (*People v. Scoggins,* 37 Cal. 676; *People v. Hong Ah Duck,* 61 Cal. 387.)

The questions objected to which were propounded to Mr. Hodges, Mr. Jones and Mr. Ynanes, except the first, were for the purpose of eliciting evidence of confessions made by defendant. Proper foundation for the introduction of such evidence was laid, and there was no error therefore in admitting it.

5. The last point made is that the court erred in overruling appellant's motion in arrest of judgment. The contention is "that, as there was no legal commitment before the filing of the information, the trial court had no jurisdiction."

This matter has already been considered and decided against appellant's contention. Besides, the motion in arrest of judgment can only be founded on defects appearing upon the face of the information or indictment, and not on the ground here urged. (Pen. Code, sec. 1185.)

We conclude that the record discloses no ground for reversal, and advise that the judgment and order appealed from be affirmed.

Haynes, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Garoutte, J., Van Fleet, J., Harrison, J.