[Crim. No. 13.   Third Appellate District.—April 13, 1906.]

## THE PEOPLE, Respondent, v. GEORGE W. GALLANER, Appellant.

CRIMINAL LAW—MURDER—CONDUCT OF RETIRED JUROR—DIAGRAM OF PLACE OF KILLING.—After the jury, in a prosecution for murder, had retired for deliberation, any juror has a right to make a drawing or diagram of the place where the homicide was committed, if made wholly from his recollection of the testimony, for the purpose of more fully and graphically expressing what he understood the evidence to be, and his view upon the condition of affairs at the scene of the homicide, and the making of a diagram, so based, and which there was evidence to sustain, was not evidence received out of court, nor additional testimony to that received at the trial, and could not have prejudiced the defendant.

ID.—INSTRUCTIONS AS TO MANSLAUGHTER.—Where there was some evidence tending to show the killing to be manslaughter, from which the jury might have been induced to convict the defendant thereof, it was proper to instruct the jury in relation to that offense, and where the defendant was convicted of manslaughter, instead of the higher offense charged which there was also evidence tending to sustain, he was not prejudiced by such instruction.

ID.—SUDDEN PASSION UPON QUARREL.—Where the evidence tended to show that there was a quarrel, it was not improper to instruct the jury that "while the purpose of intent and its execution may follow rapidly upon each other, it is proper for the jury to take into consideration the shortness of the interval, in considering whether such sudden and speedy execution may not be attributed to sudden passion and anger, rather than to deliberation and premeditation, which must characterize the higher offense."

ID.—SELF-DEFENSE—APPARENT DANGER—DOUBT OF JURY—INSTRUCTIONS AS TO CIRCUMSTANCES.—Where the court had fully instructed the jury as to the law of self-defense in view of apparent danger of great bodily harm, it was proper for the court, in view of such instruction, and also of the evidence tending to show manslaughter, to instruct them in effect that if they were in doubt as to the precise circumstances under which the homicide was committed, or as to whether the deceased at the time of it was in fact about to inflict upon defendant great bodily harm, then they should take into consideration the previous relations between the parties, and their previous conduct toward each other, including their words and acts,

and every fact and circumstance bearing upon that point of which evidence had been received.

ID.—VERDICT SUPPORTED BY EVIDENCE.—*Held,* upon review of the evidence, that the verdict for manslaughter was supported by the evidence, and that the testimony of the defendant that he shot the deceased because he was afraid he would kill or injure him was not conclusive that such fear was genuine or well-founded, in view of the circumstances proved.

APPEAL from a judgment of the Superior Court of Shasta County, and from an order denying a new trial.   C. M. Head, Judge.

The facts are stated in the opinion of the court.

J. H. Creighton, for Appellant.

U. S. Webb, Attorney General, and T. H. Brainard, District Attorney, for Respondent.

BUCKLES, J.—The defendant was charged with murder in killing one A. Garman, a bartender, in a saloon in the town of Keswick in Shasta county, and was convicted of manslaughter. A motion for a new trial was denied and defendant sentenced to state prison for a term of ten years.   The appeal is from the final judgment and from the order denying the motion for a new trial.

The first assignment of error and the one mostly relied upon for reversal is that after the case was submitted to the jury and while in the jury-room considering the verdict, one of the jurors drew on the blackboard hanging in the jury-room a diagram of the front of the barroom in which the shooting took place, giving it the appearance of having the door closed. The diagram was made by the juror wholly from his recollection of the testimony and for the purpose of graphically expressing his view upon the condition of affairs at the scene of the homicide.   No allusion was made by any of the jurors to this diagram during the time they were deliberating on their verdict, and it is charged that the jury thus received testimony on a material matter outside of the court and not on viewing the premises.

We think any juror had a right to make a drawing or picture from his recollection of the testimony for the purpose of more fully expressing what he understood the evidence to be. Had the diagram been made from the juror's own knowledge or from information which came to him through any other channel than through the testimony of the witnesses while testifying during the course of the trial, it might be said to be testimony received out of court. The testimony shows conclusively that before the defendant entered the barroom, just before the shots were fired, the door was closed, that he opened it, went in and closed it after him, and that thereafter the deceased opened the door, when two witnesses standing on the porch in front saw a portion of what took place on the inside.

The making of the diagram as it was made was not evidence received out of court nor additional testimony to that which was given during the trial and could not possibly have prejudiced the defendant. The several authorities cited by appellant go to the question of receiving testimony out of court and therefore have no application here.

The next assignment of error is that the court instructed the jury on manslaughter when it is contended the evidence did not indicate manslaughter, and under the testimony the verdict should have been either murder or acquittal. We find no error in this but had the court not given an instruction on manslaughter, it certainly would have been error.

That the defendant shot and killed the deceased, there was no dispute at the trial. At about 10:15 A. M. of the day of the killing the defendant was in the barroom holding a discussion with the deceased. When the witness Murdock went out, the defendant and deceased were left there alone, and no witness has attempted to testify to what took place between these two people in that barroom at the time, further than that the witness Murdock testified that as he was leaving he heard the defendant say to the deceased, "I have got to go down the road, and I will see that you go, too." Defendant left the barroom, and, according to the testimony of Murdock, defendant said to him at the depot soon after Murdock had left the barroom: "Garman [deceased] run me out of the saloon with

3 Cal. App.—28

a bottle." Defendant returned to the barroom that day about 1 o'clock in the afternoon and immediately on entering said to deceased: "Have you got that bottle ready—will you run me out with that bottle again?" To which deceased replied, "I don't want to have any trouble with you, nor I don't want you to come in quarreling with me or raising a disturbance." Defendant testified: "The first thing that happened after I closed the door, was when Garman [deceased] got up and made a run for me. He got up and says: 'You son of a bitch get out.' . . . I stepped to the north to get out of his way. He went to the door and throwed it open. . . . I moved toward the north to get out of his way, because I did not know what he was going to do, after what had occurred in the morning." Deceased then came toward him with a bottle in his right hand, and was angry and grappled with defendant, when defendant drew his pistol and commenced firing, and killed the deceased, hitting him with at least three of the shots fired. While there was evidence tending to show that defendant had had a quarrel with deceased in the forenoon, and that defendant had returned to renew the quarrel and that the killing was done with premeditation and therefore murder, still the evidence did tend to show a fight in which the killing might have been done under the heat of passion and so forth, and thus induce the jury to convict the defendant of manslaughter. Under the testimony in this case such instruction could not by any possibility have harmed the defendant. (*People* v. *Chun Heong*, 86 Cal. 332, [24 Pac. 1021].) As there was some evidence tending to show the killing to be manslaughter, the case of *People* v. *Chaves*, 122 Cal. 140, [54 Pac. 596], has no application.

As the evidence in this case tends to show there was a quarrel, the following instruction was not erroneous: "But while the purpose, the intent, and its execution may follow thus rapidly upon each other, it is proper for the jury to take into consideration the shortness of such interval, in considering whether such sudden and speedy execution may not be attributed to sudden passion and anger, rather than to deliberation and premeditation, which must characterize the higher offense." The instruction was certainly as favorable to the de-

fendant as could be made consistent with the facts disclosed by the evidence.

The defendant testified: "I am aware that I shot the man because he had a bottle raised and I thought he was going to kill me—thought he was going to hit me with the bottle. I don't know the position the bottle was in. He did not say he would strike me with it. I did not see from where he got the bottle. I have an idea he got it from the end of the bar where he got in the morning, when he run me out."

The court instructed the jury: "If in this you are in doubt as the precise circumstances under which the homicide was committed, that is, are in doubt as to whether the deceased, at the very moment of the killing was, in fact, about to inflict upon defendant great bodily harm, then the previous relations between the parties and their previous conduct toward each other and defendant's knowledge of the deceased become important for your consideration; and those previous relations and that previous conduct and knowledge embrace every word and every act, in short every fact and circumstance bearing upon that point, of which evidence has been received. You are to place yourselves as nearly as possible in the situation of the parties, as respects each other at the very scene and time of the homicide."

Appellant contends that this instruction amounted to the advice of the court to the jury that it might discard the direct evidence in the case and arrive at the verdict on certain circumstantial evidence and probabilities. But such a theory cannot be maintained, for the jury was distinctly told that the previous relations, previous conduct and knowledge must be such as shown by the evidence in the case, and no intimation was given that appearances might be determined from probabilities arising from circumstances not in evidence. Besides, this instruction must be read with other instructions which were given upon appearances. The court had told the jury that it was not necessary to justify such killing that the danger be actual. "It is enough that it be apparent danger; such an appearance as would induce a reasonable person in defendant's position to believe that he was in imminent danger of great bodily injury." We see no error in the instruction. Appel-

lant argues in his brief that when the prosecution closed its case, the testimony showed that defendant was justified in killing the deceased, and when the evidence was all in the state had failed to overcome the presumption of innocence. The defendant had testified to the killing and the acts and words of deceased, and his own acts, at the time of the killing, and it was the province of the jury to take all these matters into consideration as well as all the other testimony in the case and determine therefrom whether the appearances were such as to justify the defendant in killing the deceased. There was no conflict between witnesses' statement as to whether the defendant was justified in killing the deceased, for they could not be permitted to speak upon that, they could but detail the facts and leave the jury to draw the conclusion and declare the same by their verdict. The fact that defendant testified that "I shot Garman because I was afraid he would kill me or injure me" is not conclusive that such fear is genuine or well founded. Whether or not he had reason to entertain such fear and whether he did actually entertain such fear the jury must determine from the evidence detailing all the facts and circumstances, as well as it is for the jury to determine from all such facts and circumstances whether the killing was done in a quarrel and under the influence of the heat of passion, when there is evidence tending, as we have seen, to show a quarrel, and that defendant acted in the heat of passion. The firing of the shots followed almost as closely upon the heels of the declaration by deceased that defendant was a son of a bitch as one thought follows another, and the jury doubtless believed that to be the real cause of the shooting and therefore convicted the defendant of manslaughter from this view, and ignoring the fact that defendant and deceased had quarreled in the morning and deceased had run the defendant out of the barroom with a bottle and that defendant returned later in the day armed with a pistol when he would be assured of a renewal of the quarrel, might tend in some degree to indicate premeditation to enter the combat armed with a deadly weapon and to use the same if opportunity offered.

We think the verdict of manslaughter fully supported by the evidence.

There are many assignments of error as to the admission of testimony, all of which we have carefully examined, but are unable to find any prejudicial error in any of them.

Judgment is affirmed.

McLaughlin, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal was denied by the supreme court on June 11, 1906.