[Crim. No. 1737. In Bank.—August 7, 1912.]

THE PEOPLE, Respondent, v. JOHN S. ROGERS, Appellant.

CRIMINAL LAW—APPEAL—ORDER DENYING MOTION IN ARREST OF JUDGMENT.—No appeal lies from an order denying the motion of the defendant in a criminal prosecution for an arrest of judgment. Such order is always reviewable on an appeal from the judgment.

ID.—MURDER—PERPETRATION OF ROBBERY—JUDGMENT OF CONVICTION—CIRCUMSTANTIAL EVIDENCE.—Upon an appeal from a judgment convicting the defendant of murder, which was shown to have been committed in the perpetration of or attempt to perpetrate a robbery, the evidence, although entirely circumstantial, is held to be of such a character as to leave little, if any, room for doubt as to his guilt, and to be amply sufficient to support the verdict of conviction.

ID.—PHOTOGRAPH OF HEAD OF DECEASED—CHARACTERISTICS OF FATAL WOUNDS.—In such a prosecution, a photograph of the head of the deceased, showing the characteristics of the fatal wounds, taken three days after the killing and shortly after his body was found in the building where the defendant was employed, was admissible in evidence in support of the theory of the prosecution that the wounds were produced by a certain kind of hatchet, similar to those used in the defendant's place of business, and so constructed as to be capable of making impressions similar to those found upon the skin of the face of the deceased.

ID.—SUFFICIENT PRELIMINARY PROOF OF PHOTOGRAPH.—Evidence that the photograph was taken at such time by a police officer, who had been police photographer for eight years, and that nothing had

been done to the head after the discovery of the body and prior
to the taking of the photograph except to wash the blood from the
face and out of the hair, and also that the photograph was an exact
photograph of the portion shown of the head and face as they ap-
peared at that time, was sufficient preliminary proof to warrant
the admission of the photograph in evidence.

ID.—IMPROPER USE OF PHOTOGRAPH IN ARGUMENT—ABSENCE OF OBJEC·
TION.—An objection cannot be urged on appeal to an improper use
made of such photograph by the district attorney in the course of his
argument to the jury, in the absence of an objection thereto made at
the trial.

ID.—REFUSAL OF CONTINUANCE—INABILITY TO PREPARE FOR TRIAL—FAIL·
URE TO RENEW MOTION AT TIME OF TRIAL—EXPRESSION OF READI-
NESS FOR TRIAL.—The refusal of the court when the case was called
for trial to grant the defendant's motion for a continuance, on the
ground that he had not been able to prepare for the trial because
the official shorthand reporter had not filed his longhand transcript
of the testimony taken at the preliminary examination, is without
prejudice, if it appears that the court did subsequently postpone the
trial for three days, and when the case was called on that day no
further request for a continuance was made, and counsel for the
defendant expressed his readiness for trial.

ID.—EXCLUSION OF WITNESSES FROM COURTROOM—DISCRETION NOT
ABUSED.—In such a prosecution, the exclusion of witnesses for the
people from the courtroom during the taking of testimony is a
matter largely within the discretion of the trial court, and where it
appears that what the defendant specially desired in making such
a request was that all police officers except the one actually being
examined, should be excluded, it was not a breach of discretion for
the court to limit the order of exclusion to "the police officers not
on the witness stand during the time the testimony of the other
police officers is being taken."

ID.—REMARK OF COURT STOPPING IMMATERIAL CROSS-EXAMINATION—AB-
SENCE OF PREJUDICE.—A remark by the court, during the cross-ex-
amination of a witness for the people as to an immaterial matter,
that he did not think a question asked was material, and that coun-
sel should desist from that line of questions, was without prejudice
to the defendant.

ID.—ASSUMPTION IN ARGUMENT OF PROPER DEDUCTIONS FROM EVIDENCE.
It was proper for the district attorney to assume, in the course of
his argument to the jury, as a deduction or conclusion from the
evidence, that at a particular hour of the day of the homicide, when
the defendant was missed at his place of business, he was then
engaged in killing the deceased.

ID.—MURDER IN FIRST DEGREE—COMMISSION DURING ROBBERY—EVI-
DENCE SHOWING EITHER GUILT OF CRIME CHARGED OR INNOCENCE—

FAILURE TO INSTRUCT AS TO LESSER OFFENSES.—Under section 189 of the Penal Code, a murder which is committed in the perpetration or attempt to perpetrate robbery is murder of the first degree, and where the evidence shows that the defendant was either guilty of such a murder, or was not guilty at all, it was not error for the trial court to refuse to instruct the jury that they might find a verdict of murder in the second degree or one of manslaughter.

ID.—REFUSAL TO INSTRUCT AS TO LESSER OFFENSES WHEN PROPER.—It is proper to refuse to instruct a jury as to a lesser offense or degree included within the offense charged, where the evidence is of such a nature as to warrant, in the event that the defendant is guilty at all, only a verdict for the higher offense or degree.

ID.—INSTRUCTION—CONVICTION OF MURDER IN FIRST DEGREE—DISCRETION OF JURY TO FIX PUNISHMENT—NECESSITY FOR MITIGATING CIRCUMSTANCES.—In a prosecution for murder of the first degree, it was proper for the court to instruct the jury, in the event they found the defendant guilty of that offense, and also found some further fact or circumstance of extenuation, that it was within their discretion to pronounce such a sentence as would relieve him from the extreme penalty of the law, but that the discretion was not an arbitrary one, and was limited to determining which of two punishments should be inflicted, and was to be employed only when the jury was satisfied that the lighter penalty should be imposed, and in the absence of any showing of extenuation, it was their duty to find a simple verdict of murder in the first degree, and leave with the law the responsibility of affixing the punishment.

ID.—FAILURE TO GIVE INSTRUCTIONS NOT REQUESTED—DEFINITION OF ROBBERY—NEGLECT OF DEFENDANT TO BECOME WITNESS.—In the absence of any request therefor in such prosecution, the defendant cannot complain of the failure of the court either to instruct the jury as to what constitutes robbery or attempted robbery, or to instruct them that the neglect of the defendant to be a witness cannot in any manner prejudice him or be used against him on the trial.

APPEAL from a judgment of the. Superior Court of the City and County of San Francisco, from an order refusing a new trial, and from an order denying a motion in arrest of judgment. Frank R. Willis, Judge presiding.

The facts are stated in the opinion of the court.

W. D. Cardwell, Eugene G. Strickler, and D. F. Conway, for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, C. M. Fickert, District Attorney, and James F. Brennan, Assistant District Attorney, for Respondent.

ANGELLOTTI, J.—The defendant was charged by information filed in the superior court of the city and county of San Francisco on January 4, 1912, with the crime of murder, alleged to have been committed on November 18, 1911, in willfully, unlawfully, feloniously, and with malice aforethought killing one Benjamin A. Goodman, a human being. Having entered a plea of not guilty, his trial resulted in a verdict of the jury finding him guilty of murder in the first degree, without recommendation. On March 16, 1912, judgment of death was pronounced. This is an appeal by defendant from such judgment and from the order denying his motion for a new trial. There is also an appeal from the order denying his motion in arrest of judgment, but no appeal lies from such an order, which is always reviewable on an appeal from the judgment, and there was absolutely no merit in the motion.

It is suggested that the evidence was insufficient to support the verdict. The evidence was such as to force the conclusion that the deceased, who was a salesman for a jewelry company, was murdered in the basement of the place of business of the San Francisco Produce Company at the corner of Oregon and Front streets, San Francisco, late in the afternoon of November 18, 1911, and that the murder was committed in the perpetration of or attempt to perpetrate a robbery. Deceased then had in his possession fourteen or fifteen watches, several chains, and some valuable rings, all of which were taken from his body by the person or persons who killed him. The only real question in the case was as to the identity of the murderer or murderers. While the evidence connecting this defendant, who was an employee of the produce company, with the matter was entirely circumstantial, it was of such a character as to leave little, if any, room for doubt in the mind of any one reading the record, as to his guilt. It certainly was amply sufficient to support the verdict of the jury.

The claim most seriously urged by counsel for defendant is that the trial court erred in overruling his objection to the introduction in evidence of a photograph of the right side of the head and face of the deceased, taken by Police Officer

Blum, who had been police photographer for eight years. This photograph was taken on November 21, 1911, a few hours after the body was found. There was evidence sufficient to warrant a conclusion that nothing had been done to the head after the discovery of the body and prior to the taking of the photograph except to wash the blood from the face and out of the hair, and also that the photograph was an exact photograph of the portion shown of the head and face of the deceased as they appeared on November 21, 1911, which was the day upon which the body was discovered, after the blood had been washed from the hair and face. The photograph showed a wound in the neighborhood of the right temple, where there was a fracture of the skull. There were three other fractures of the skull, but this, in the opinion of Dr. Magnus, was the most serious, and undoubtedly sufficient to cause death. The testimony showed that this wound had been made with some blunt instrument, and from the marks on the face apparently with an instrument that had grooves in it which were impressed on the face, leaving the skin corrugated One object of the prosecution in introducing the photograph was to give to the jury a better idea of the actual appearance of the skin of the face in this regard, it being the theory that the wound was inflicted with a hatchet similar to those used by the employees of the produce company, which had heads grooved in such a way as to be capable of leaving such an impression. We have no doubt that a photograph was admissible for the purpose mentioned, under the general rule that photographs may be used ''to exhibit particular locations or objects where it is important that the jury should have a clear idea thereof, and the situation may thus be better indicated than by the testimony of witnesses, or where they will conduce to a better or clearer understanding of such testimony'' (*State* v. *Miller,* 43 Or. 325, 328, [74 Pac. 659]), and we are satisfied that the preliminary proof was sufficient to warrant the court in admitting in evidence the photograph in question. The action of the trial court in overruling the objection to the photograph of incompetency, irrelevancy, and immateriality and lack of a proper foundation cannot therefore be held to have been erroneous. Some complaint is made in the closing brief of defendant and in the oral argument that an improper use was made of this photograph by the dis-

trict attorney in his argument, by calling attention to the fact
that the head of defendant's hatchet, which it was claimed was
larger than those used by other employees of the produce com-
pany, "fits to a nicety" the impressions found on the face of
deceased as shown by the photograph.    Without discussing the
merits of defendant's objection to this line of argument, it is
sufficient to say that no objection whatever was made by him
thereto at the trial.

Complaint is made that the trial court erred in denying a
motion of counsel for defendant for a continuance when the
case was called for trial on March 1, 1912.    But it appears
that the court did subsequently postpone the commencement
of the trial to March 4, 1912, and that when the case was called
on the day last mentioned no request for a further continu-
ance was made and defendant through his counsel answered
"ready for trial."    The motion for a continuance on March 1st
was based on the claim that defendant had not been able to
make necessary preparations to proceed with the trial because
the shorthand reporter officiating at the preliminary examin-
ation had not filed his longhand transcript of the proceedings
at such examination with the county clerk.    No objection on
that score being made when the case was called on March 4th,
and defendant expressing his readiness to then proceed with
the trial, presumably the transcript had been filed and de-
fendant was, as he said, ready for trial.

Complaint is made that the trial court refused to exclude
the witnesses for the people from the courtroom during the
taking of testimony.    This, of course, is a matter largely
within the discretion of the trial court.    We find no error in
the action of the court in this regard.    The record shows that
what defendant specially desired and asked for was that all
the police officers except the one actually being examined
should be excluded, and the court ruled that it would "ex-
clude the police officers not on the witness stand during the
time the testimony of the other police officers is being taken."

At a certain stage in the cross-examination of one of the
police officers, the court remarked as to a question asked by
counsel: "I do not think this is material at all," and directed
counsel to desist from that line of questions.    No claim is
made that the matter as to which the question was asked was
at all important, or that the court erred in refusing to allow:

CLXIII Cal.—31

further questions on that line to be put, and there is nothing in the record to warrant any such claim. The point appears to be that the language of the court was such as to injure defendant's cause with the jury, but we can see no force in any such claim.

The briefs do not specify any instance wherein the testimony of admissions made by the defendant to police officers was improperly admitted on the trial, but simply states generally that such admissions were made under such circumstances as to require their exclusion. We have carefully examined the record in this regard and find no foundation for the claim.

In his argument to the jury the assistant district attorney after saying that the defendant was missing at the store from 4:30 P. M. to 5:50 P. M. on November 18th, said: "What was he doing at that time? Where was he? The greater portion of that time he was in the basement of the San Francisco Produce Company, murdering young Goodman and taking from his possession the jewelry." Defendant's counsel excepted to these remarks and assigned them as misconduct, saying there was nothing in the evidence to warrant the statement. As substantially suggested by the trial court in response to the objection and exception, the assistant district attorney was apparently stating, not some fact of which he pretended to have any knowledge outside of the evidence given on the trial, but his deduction or conclusion from the evidence so given. The statement was entirely within the domain of legitimate argument.

The effect of the instructions given to the jury was to confine the jury to one of three verdicts, viz.: murder in the first degree, murder in the first degree with the penalty of life imprisonment, and not guilty. The jury were not instructed that they might find a verdict of murder in the second degree or one of manslaughter. In this action of the trial court there was no error. The evidence was such that the defendant was necessarily either guilty of murder in the first degree or not guilty at all. Section 189 of the Penal Code provides that "all murder . . . which is committed in the perpetration or attempt to perpetrate . . . robbery . . . is murder of the first degree." It is thoroughly established in this state that it is proper to refuse to instruct a jury as to

a lesser offense or degree included within the offense charged, where the evidence is of such a nature as to warrant, in the event that the defendant is guilty at all, only a verdict for the higher offense or degree. (See *People* v. *Swist,* 136 Cal. 520, [69 Pac. 223] ; *People* v. *Keith,* 141 Cal. 689, [75 Pac. 304] ; *People* v. *Lopez,* 135 Cal. 23, [66 Pac. 965] ; *People* v. *Chaves,* 122 Cal. 140, [54 Pac. 596] ; *People* v. *Chaves,* 103 Cal. 407, [37 Pac. 389] ; *People* v. *Lee Gam,* 69 Cal. 552, [11 Pac. 183] ; *People* v. *Turley,* 50 Cal. 469.)    This rule is clearly applicable in a case like this, where the murder was committed in the perpetration or attempt to perpetrate the crime of robbery, and the statute in terms makes such a killing murder of the first degree.

The court instructed the jury as follows:—

"The court instructs you that if the jury in this case should find the defendant, John S. Rogers, guilty of murder in the first degree and they also shall find the further fact that there is some extenuating fact or circumstance in the case, it is within their discretion to pronounce such a sentence as will relieve the defendant, John S. Rogers, from the extreme penalty of the law.    The Penal Code invests a jury in a criminal case for murder with the discretion, but the discretion is not an arbitrary one, and is limited to determining which of two punishments shall be inflicted, and is to be employed only when the jury is satisfied that the lighter penalty should be imposed.    If the evidence shows the defendant to be guilty of murder in the first degree, but does not show some extenuating fact or circumstance, it is the duty of the jury to find a simple verdict of murder in the first degree, and leave with the law the responsibility of affixing the punishment."

Section 190 of the Penal Code has provided ever since 1874 that "Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same."    It is substantially urged that the discretion of the jury here referred to is one to be exercised without any instruction from the court as to the grounds or reasons for the mode in which they shall exercise it.    As was said in *People* v. *Bawden,* 90 Cal. 195, [27 Pac. 204], if the question here presented were a new one, there would be strong reasons for holding in accord with defendant's claim.    In that case a similar instruction was given to

the jury, and this court upheld the action of the trial court in view of previous decisions on the same question. *People* v. *Brick,* 68 Cal. 190, [8 Pac. 858], was one of these decisions, and in that case the instruction approved was word for word the instruction here given. (See, also, *People* v. *Jones,* 63 Cal. 168; *People* v. *Murback,* 64 Cal. 369, [30 Pac. 608] ; *People* v. *Olsen,* 80 Cal. 122, 128, [22 Pac. 125].) The law of this state thus appears to be thoroughly settled to the effect that the instruction in question is not erroneous.

. The court failed to instruct the jury as to what constituted robbery or attempted robbery, and also that the neglect of defendant (who did not take the stand as a witness) to be a witness cannot in any manner prejudice him or be used against him on the trial or proceeding. (Pen. Code, sec. 1323.) No request for an instruction as to either of these matters was made by defendant. So far as the failure to instruct as to what constituted robbery or attempted robbery is concerned, we are quite satisfied that the general rule obtains to the effect that where a party in a criminal case fails to ask the court to give instructions to the jury upon a particular point, he cannot complain of error on the part of the court in not giving the instructions. (See *People* v. *Gray,* 66 Cal. 271, [5 Pac. 240] ; *People* v. *Christensen,* 85 Cal. 568, 571, [24 Pac. 888] ; *People* v. *Ahern,* 93 Cal. 518, [29 Pac. 49].) Nor can we see how any possible prejudice could have resulted to defendant because of the absence of an instruction on that point. The same rule has been applied by this court where, under the same circumstances that existed here, the trial court neglected to instruct the jury in reference to the failure of the defendant to take the stand as a witness in his own behalf. The court said that in the absence of a request for such an instruction, defendant could not be heard to complain (*People* v. *Flynn,* 73 Cal. 511, [15 Pac. 102].) This appears to be the conclusion reached in other states where the question has been presented, except in Washington, where a statute in terms provided that *"it shall be the duty of the court to instruct the jury* that no inference of guilt shall arise against the accused if he fail or refuse to testify as a witness in his own behalf." (See *State* v. *Myers,* 8 Wash. 183, [35 Pac. 582].) We have no statute here that specifically requires any instruction on this subject. No reason appears why the decision in

*People* v. *Flynn*, 73 Cal. 511, [15 Pac. 102], on this point is not correct, and we adhere to the views there expressed.

No other point is made for reversal and after a careful consideration of the whole record we fail to find any substantial error in the proceedings.

The judgment and order denying a new trial are affirmed.

Shaw, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.