[Crim. No. 1426.   First Appellate District, Division One.—March 26, 1928.]

THE PEOPLE, Respondent, v. ALFRED DiDONATO, Appellant.

Frank Currant and James W. Campbell for Appellant.

U. S. Webb, Attorney-General, and Emery F. Mitchell, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The appellant, Alfredo DiDonato, and one George Martin were jointly charged with and tried for the crime of murder. Each was found guilty of murder of the first degree, and life imprisonment was fixed as the penalty. From the judgment of conviction and the order denying his motion for a new trial DiDonato has taken this appeal.

The trial court charged the jury in effect that it should either find the accused guilty of first degree murder or acquit them of any offense whatever; and appellant's main contention on this appeal is that in thus restricting the issue before the jury, prejudicial error was committed, it being

claimed with respect thereto that the evidence adduced at the trial admitted of verdicts either of second degree murder **or** manslaughter.

Section 189 of the Penal Code declares that all murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate certain felonies enumerated therein, including burglary, is murder of the first degree; and all other kinds of murders are of the second degree; and "It is thoroughly established in this state," says the supreme court in *People* v. *Rogers,* 163 Cal. 476 [126 Pac. 143], "that it is proper to refuse to instruct a jury as to a lesser offense or degree included within the offense charged, where the evidence is of such a nature as to warrant, in the event that the defendant is guilty at all, only a verdict for the higher offense or degree. (See *People* v. *Swist,* 136 Cal. 520 [69 Pac. 223]; *People* v. *Keith,* 141 Cal. 689 [75 Pac. 304]; *People* v. *Lopez,* 135 Cal. 23 [66 Pac. 965]; *People* v. *Chaves,* 122 Cal. 140 [54 Pac. 596]; *People* v. *Chaves,* 103 Cal. 407 [37 Pac. 389]; *People* v. *Lee Gam,* 69 Cal. 552 [11 Pac. 183]; *People* v. *Turley,* 50 Cal. 569.)" See, also, *People* v. *Watts,* 198 Cal. 776 [247 Pac. 884]. If, therefore, in the present case, the evidence was of such a nature as to warrant only a verdict of first degree murder, in the event that the accused were guilty at all, the trial court did not violate the constitutional inhibitions against charging a jury with respect to matters of fact nor otherwise commit error in confining the issue to first degree murder (*People* v. *Watts, supra*).

The record discloses that Robert Foote, the victim of the homicide, was shot and mortally wounded on the night of March 15, 1927, while guarding against an anticipated entry by burglars a building which housed one of several unused pumping plants constructed along the side of an irrigation canal in the sparsely settled regions of the west side of Fresno County. He was found wounded the next morning by a fellow employee, having been shot twice, once through the thigh and again through the left half of the back. He died a few days afterwards as the result of the wounds. There were no eye-witnesses to the crime, and the prosecution's case against DiDonato and Martin was based upon

circumstantial evidence; but in their defense the accused men took the witness-stand and admitted that Martin had shot Foote while Martin was reconnoitering about the premises in furtherance of a conspiracy which existed between the accused men to burglarize the place and steal therefrom the pumping apparatus, part of which they had stolen the night before. Appellant contends, however, that with respect to the night of the shooting no more than a preparation to commit burglary was shown, as distinguished from an attempt to commit such crime, and that consequently a case of first degree murder was not established.

Assuming the testimony given by appellant and Martin to be true, it reveals the following facts: They are brothers-in-law, and at the time of the homicide lived near the city of Fresno, many miles distant from the scene of the alleged crime. While hunting in the vicinity of said pumping stations, which were not being operated at the time, they conceived the idea to burglarize one of them and steal therefrom the pumping apparatus. Pursuant to such design they obtained iron clamps, cables, blocks and other paraphernalia with which to dismantle and remove the machinery, which weighed more than a ton. On the night preceding the homicide they drove to the pumping station and stole the electric motor. At the same time they detached the pump, hoisted it out of and suspended it above the well so that no unnecessary time would be consumed the following night, at which time they intended to return to dismantle and remove the same. Upon their return the next night Martin drove a Chevrolet car belonging to appellant and carried a loaded rifle, and appellant drove a small truck with a trailer attached. When they reached a point about three miles distant from the pumping station they stopped and Martin was told to go on ahead to ascertain if the way was clear to consummate the theft of the machinery and to see also whether their operations of the night before had been detected After some difficulty in locating the particular pumping station he was looking for he entered the yard thereof, which was inclosed with a barbed-wire fence, carrying his rifle in one hand and his electric flashlight in the other. He flashed his light through one of the windows of the station-house to confirm his belief, as he claims, as to the identity of the pumping-house, and almost instantly

Foote, who was concealed about the premises, shot at him. Martin fired in return; and in the exchange of the shots which followed, while Martin was attempting to reach the gate, Foote was wounded. Martin then fled, joined appellant down the road, and after telling him of the shooting they sped on to their homes near Fresno.

The rules prevailing in this state for determining whether the acts of a person extend beyond the point of preparation to commit an offense and amount to an attempt to do so are fully set forth and discussed in the case of *People* v. *Lanzit,* 70 Cal. App. 498 [233 Pac. 816], and it is there said: "It unquestionably is true that mere acts of preparation—acts not proximately leading up to the consummation of the intended crime—will not suffice to establish an attempt to commit the offense, especially when made at a distance from the place where the contemplated crime is to be committed (8 R. C. L., p. 278);" and then after pointing out the lack of harmony in the authorities on the subject and stating that to a very great extent each case must stand upon its own facts, the court continues: "Generally speaking, the attempt, as distinguished from mere preparation, consists of some direct movement towards the consummation of the intended crime after the preparations have been made. (*People* v. *Murray,* 14 Cal. 159.) The difficulty generally is in determining the proximity of the overt act or acts to the complete accomplishment of the substantive crime. The acts proximately leading up to the consummation of the intended crime need not include the last proximate act for its completion. It is sufficient if the overt acts reach far enough toward the accomplishment of the intended offense to amount to the *commencement* of its consummation. That is to say, if the actual transaction has commenced which would have ended in the crime if not interrupted, there is an attempt to commit the crime (*People* v. *Mayen,* 188 Cal. 256 [24 A. L. R. 1383, 205 Pac. 435]). In *State* v. *Roby,* 194 Iowa, 1032 [188 N. W. 709], the Iowa supreme court correctly states the rule as follows: 'It [the overt act] need not be the last proximate act to the consummation of the offense attempted to be perpetrated, but it must approach sufficiently near it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the prep-

arations are made. Whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of that design will constitute an attempt, and the courts should not destroy the practical and common sense administration of the law with subtleties as to what constitutes preparation and what an act done toward the commission of a crime. It would be useless to attempt to lay down any rule by which an act might be characterized as overt or otherwise in a particular case; general principles must be applied in each case as nearly as can be, with a view to working out substantial justice.' Upon this subject the New York court of appeals, in the case of *People* v. *Sullivan*, 173 N. Y. 122 [93 Am. St. Rep. 583, 63 L. R. A. 353, 65 N. E. 989], speaking through Cullen, J., says: 'The question of what overt act is sufficient to constitute an attempt to commit a crime has been the subject of much discussion by both textwriters and courts, and of some conflict in the decisions. In the early English cases the view seems to have been adopted that to constitute an attempt the overt act must be the final one toward the completion of the offense, and of such a character that, unless it had been interrupted, the offense itself would have been committed. . . . This extreme doctrine has not been accepted in this country, certainly not in this state. . . . But assuming that mere preparation is not in all cases an attempt to commit the crime, it is well settled in this country that it is not necessary to constitute an attempt that the act should be the last proximate one for the completion of the offense. However attempt is viewed in England, the act need not according to the American idea, be the next preceding the one which would render such substantive crime complete (Bishop's Criminal Law, sec. 762).' In *People* v. *Mills*, 178 N. Y. 274 [67 L. R. A. 131, 70 N. E. 786], it was said by Vann, J., 'An overt act is one done to carry out the intention, and must be such as would naturally effect that result unless prevented by some extraneous cause.' . . . ''

■ Applying the foregoing rules to the facts of the present case it is evident that the acts of the accused men went far beyond the point of preparing for a burglary, and constituted, at the time of the shooting, an attempted perpetration of such crime as that term is construed and given effect by the authorities above cited. The evidence sup-

porting this conclusion doubtless established a continuing conspiracy (*People* v. *Schmidt,* 33 Cal. App. 426 [165 Pac. 555]), having for its ultimate design the theft of the pumping machinery of which the motor was only a part. Even assuming, therefore, that the theft of the motor constituted a distinct burglary, the testimony of the accused men clearly demonstrated that the real object of the conspiracy was not then ended and that there was still existent an intention and design to steal the balance of the pumping machinery. The first overt act committed in consummation of such design, beyond the stage of mere preparation, was in entering the building the night before the homicide, dislodging the pumping machinery and making it ready for removal; and the next direct movement toward its execution was in driving to the vicinity of the premises the following night for the declared purpose of again entering the building and removing said pumping apparatus, and in one of them actually going upon the inclosed premises and examining the building to see that the way was clear to complete the crime; and, finally, the evidence shows that there never was a voluntary abandonment of the illegal enterprise, but that the successful accomplishment thereof was prevented only by the fusillade of bullets from Foote's pistol. Although the overt acts above mentioned were not the last proximate acts in the consummation of the burglary, they clearly amounted to direct movements toward and were the commencement of its consummation; and approached sufficiently near to it to stand either as the first or some step in a direct movement towards the consummation of the offense after the preparations were made, and would have resulted inevitably in the completion of the crime had not the final acts in the perpetration thereof been prevented by extraneous cause. ■ Therefore, said overt acts were legally sufficient to constitute an attempt to commit said crime (*People* v. *Lanzit, supra*); and that being so, the trial court properly limited the issue before the jury to first degree murder.

■ There was no element of self-defense presented in the case, and therefore the trial court was justified in refusing to give to the jury appellant's requested intructions upon that subject. The deceased was killed while lawfully engaged in repelling an invasion of property by one about

to commit a burglary, and under such circumstances it would be a strange doctrine which would allow a person thus engaged in such an unlawful enterprise to exculpate himself entirely from the consequences of his felonious act by proving merely that the person acting in the lawful defense of property fired the first shot. As held in *People* v. *Perry,* 195 Cal. 623 [234 Pac. 890]: "If a homicide is committed by one of the confederates while engaged in an attempt to perpetrate the crime of robbery in furtherance of a common purpose, the person or persons so engaged, but who do not actually do the killing, are as accountable to the law as though their hands had intentionally fired the fatal shot or given the fatal blow, and such killing is murder in the first degree. The jury has no option but to render a verdict of murder in the first degree whether the killing was intentionally or accidentally done. . . . ''

■ Nor do we find any error in the court's refusal to give appellant's proposed instructions concerning the presumptions of innocence and good character, and regarding circumstantial evidence, for the reason that the court's charge fully and fairly covered that field.

As to the final point urged, the case of *People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861], declares that ''whether or not the act committed was the ordinary and probable effect of the common design, or whether it was a fresh and independent product of the mind of one of the conspirators, outside of, or foreign to, the common design, is a question of fact for the jury (*Bowers* v. *State,* 24 Tex. App. 542 [5 Am. St. Rep. 901, 7 S. W. 247]; *Spies* v. *People,* 122 Ill. 1, 6, 42 [3 Am. St. Rep. 320, 12 N. E. 865, 17 N. E. 898]), and if there be any evidence to support the finding of the jury on this question its determination is conclusive.''

■ In accordance with this principle of law the court in the present case fairly submitted such question to the jury's determination under proper instruction reading in part as follows: '' . . . a conspirator is not responsible for an act of a co-conspirator which is not a part of their common design, was not originally contemplated, is not in furtherance of it, and not the legitimate consequence of anything connected therewith.'' It was therefore not error

to refuse to give appellant's proposed instruction upon the same subject.

No error in the trial of the action being shown, the judgment and order appealed from are affirmed.

Tyler, P. J., and Parker, J., *pro tem.*, concurred.