[Crim. No. 2816. In Bank.—February 1, 1926.]

## THE PEOPLE, Respondent, v. OSCAR FOSTER, Appellant.

[1] CRIMINAL LAW — ROBBERY — IDENTIFICATION OF DEFENDANT — EVIDENCE—APPEAL.—In this prosecution for the robbery of a candy store, where the employee from whose immediate presence the money was taken and who was compelled to assist in emptying the money till positively identified defendant as the person who committed the robbery, the appellate court was not justified in reversing the judgment of conviction merely because another employee, whose testimony was badly shaken and who admitted she was very badly frightened and extremely nervous while the defendant was in the store, was unable to identify him as the person who entered the store and committed the crime.

[2] ID.—NAME OF PERSON FROM WHOM MONEY TAKEN—AMENDMENT OF INFORMATION.—In such a prosecution, the trial court does not err in permitting the district attorney, during the course of the trial and after the testimony being introduced on behalf of the people has disclosed a mistake in the statement of the name of the person from whose immediate presence the money was taken, to amend the information to correctly state such fact, where such testimony is the same as that given in the presence of defendant and his attorney at the preliminary examination and, therefore, does not come as a surprise to defendant.

[3] ID. — INDICTMENT — INFORMATION — AMENDMENTS — DIFFERENT PROCEDURE.—The procedure by indictment and information are so vastly different as to justify the distinction observed by section 1008 of the Penal Code, which prohibits the amendment of an indictment in such form as to change the offense charged therein but permits the amendment of an information so long as the crime stated by the amendment is supported by the evidence which was taken at the preliminary examination.

[4] ID.—PRELIMINARY EXAMINATION—OFFENSE CHARGED—COMMITMENT FOR DIFFERENT OFFENSE.—Under our system of criminal procedure the committing magistrate is not limited in making his order of commitment to the allegations of the complaint or the crime named therein, but it is his duty to commit the accused for trial for the offense disclosed by the evidence, even though it be a different offense than the one laid in the complaint.

2. See 14 Cal. Jur. 93.
4. See 7 Cal. Jur. 985.

[5] Id.—Procedure by Information—Legislative Control—Correction of Error by Amendment.—The whole system of procedure by information is subject to control and regulation by the legislature; and, therefore, conceding that the district attorney by virtue of section 809 of the Penal Code is confined to the same crime in framing the information as the one designated by the magistrate in the commitment, such an exaction would not strip the legislature of the power to authorize the correction of an error by an amendment of the information charging robbery so as to correctly identify the person who was actually injured by the robbery if the evidence taken at the preliminary examination justifies the amendment.

[6] Id.—Identity of Crime—Proof—Presumptions.—Criminal acts are never to be presumed or indulged against a person, but must be proved; and proof of the robbery alleged in an information will not give rise to a presumption that another robbery had been committed by the defendant.

[7] Id.—Erroneous Allegation as to Person Injured—Identity of Act — Immaterial Error. — The provision of section 956 of the Penal Code that "an erroneous allegation as to the person injured is not material," if the "offense is described with sufficient certainty in other respects to identify the act," does not mean that the error which will be held to be immaterial is referable only to a mistake as to the name or a misdescription of the person injured, and therefore not referable to mistake as to the person injured.

[8] Id.—Amendment of Information—Discretion of Trial Court—Absence of Substantial Prejudice.—By the amendment as made to section 1008 of the Penal Code in 1911, the legislature intended to permit, in the discretion of the trial court, the amendment of information where it can be done without substantial prejudice to the rights of the defendant, so as to correctly state the offense shown by the evidence taken at the preliminary examination; and a substitution in an information charging robbery of the person actually injured in the place of the one who was not injured, so far as the loss of property is concerned, but who was actually present and held in fear during a portion of the time when the injured person was held under duress by the defendant, cannot be said to be prejudicial to the substantial rights of the defendant.

[9] Id. — Erroneous Statement of Person Injured — Identity of Crime—Plea of Once in Jeopardy.—In a prosecution for robbery, an error in the statement in the information of the name of

6. See 8 Cal. Jur. 23; 8 R. C. L. 173.
7. See 14 Cal. Jur. 99.
8. See 14 Cal. Jur. 91; 14 R. C. L. 192.

the person from whose immediate presence the money was taken, which error the trial court on motion permits to be corrected by the filing of an amended information, does not justify the contention by the defendant that the identity of the crime places him in a position where he cannot defend himself against a second charge based upon the same offense, where, if any question should arise as to the identity of the person robbed, the defendant could show beyond the peradventure of a doubt, both by parol evidence and by the record in the case, including the information, the evidence, and the minutes of the court, that the person whom the defendant was charged with and convicted of robbing on the day in question, of the sum stated and proven, was the person named in the amended information.

[10] Id.—Robbery—Invalid Count—Evidence—Prejudice—Presumption.—The people cannot be charged with bad faith by charging the defendant in the same information with two different offenses of robbery, where the evidence amply justifies such action; and, assuming the invalidity of the second count of an information charging robbery, it will not be presumed that the admission of evidence in support of such second count had a prejudicial effect upon the minds of the jurors and influenced them to the defendant's injury in their consideration of the first or valid count.

[11] Id.—Alibi—Evidence—Erroneous Instruction.—An alibi is not a separate or affirmative defense, and the jury is not restricted or limited in its consideration of the case to the alibi defense alone, but should consider that question with all the other evidence in the case; and, therefore, in a prosecution for robbery, in which the defendant relies upon the defense of alibi, it is not error to refuse an instruction offered by the defendant which states that it is sufficient if, after hearing all the evidence "introduced upon this subject by the defendant," the jurors have a reasonable doubt of his presence at the time and place where the commission of the crime is charged, they must give him the benefit of this doubt, and find him not guilty.

[12] Id.—Alibi—Burden of Proof—Instructions.—In this prosecution for robbery, in which the defendant relied upon the defense of alibi, in view of the instructions given by the court upon the subjects of burden of proof, preponderance of evidence and reasonable doubt, and the fact that the court did call the attention of the jury to the defense of alibi and instructed the jury that it was impossible for the defendant to be "in two different places at the same time," the trial court did not commit prejudicial error by failing of its own motion to instruct the jury that the

11.   See 7 Cal. Jur. 882; 8 R. C. L. 124.
12.   Burden and degree of proof as to alibi, notes, 41 L. R. A. 530; 29 A. L. R. 1127. See, also, 8 Cal. Jur. 336.

burden was not upon the defendant to establish an alibi by a preponderance of the evidence, but that it was sufficient to entitle the defendant to an acquittal if the evidence of alibi, considered in connection with all the evidence in the case, raised in the minds of the jury a reasonable doubt as to defendant's guilt.

(1) 17 C. J., p. 264, n. 89; 34 Cyc., p. 1809, n. 82. (2) 16 C. J., p. 323, n. 1, p. 324, n. 16, p. 327, n. 51, p. 329, n. 82; 28 C. J., p. 763, n. 8, p. 812, n. 26; 31 C. J., p. 561, n. 46, p. 569, n. 68, p. 827, n. 98, p. 830, n. 69. (3) 31 C. J., p. 827, n. 9 New. (4) 16 C. J., p. 333, n. 31 New. (5) 31 C. J., p. 625, n. 51, p. 630, n. 51, p. 827, n. 9 New. (6) 16 C. J., p. 534, n. 33 New, 37. (7) 31 C. J., p. 729, n. 54. (8) 31 C. J., p. 830, n. 69. (9) 16 C. J., p. 426, n. 23, 32. (10) 16 C. J., p. 1107, n. 25; 17 C. J., p. 214, n. 31, p. 215, n. 32, p. 225, n. 70. (11) 16 C. J., p. 777, n. 87 New, p. 978, n. 58. (12) 16 C. J., p. 977, n. 44, 49.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Chas. S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. W. Judd and J. A. Balthasar for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

SEAWELL, J.—The defendant was charged by an information filed against him on the twelfth day of September, 1924, by the district attorney of the county of Los Angeles, with the commission of two separate and distinct crimes of robbery, separately stated in the information. Both robberies were committed in See's candy store, located at 135 Northwestern Avenue, in the city of Los Angeles, on July 19, 1924, and July 24, 1924, respectively. The first robbery was committed at about the hour of 10 o'clock P. M. and the second at about 9:35 o'clock P. M. Upon both occasions the defendant entered the candy store of which Mr. See was the owner and proprietor alone and undisguised in any manner, and with drawn revolver compelled the lady employees thereof to stand by while he took and compelled the delivery to him upon his first entry the sum of $46 and

upon the second entry he took the sum of $23 from the cash register in said candy store.

The jury returned a verdict of guilty as charged in the information upon both counts. The court pronounced judgment as prescribed by law upon the verdict of guilty as found by the jury under the first count of the information, but declined to pronounce judgment against the defendant under the second count, giving as a reason therefor that it was of the opinion that the ends of justice would be fully subserved by the imposition of one sentence, and thereupon made an order dismissing the second count. Appellant upon appeal makes the point that the trial court erred in two major particulars, first, by permitting the district attorney to amend the second count of the information, and, secondly, by refusing to give a portion of an instruction offered by him in support of his defense of alibi, which contained both objectionable and unobjectionable statements of the law which will hereafter be considered.

That portion of the first count of the indictment which is descriptive of the offense reads: "That the said Oscar Foster, *alias* Robert Smith, *alias* Jack Todd, on the 19th day of July, 1924, at and in the county of Los Angeles, State of California, did wilfully, unlawfully and feloniously and forcibly take from the person, possession and immediate presence of one Mrs. Agnes Funke, forty-six ($46.00) dollars . . . the personal property of the said Mrs. Agnes Funke . . . " The allegations necessary to the statement of an offense of this character, as to the money having been taken without the consent and against the will of said Mrs. Agnes Funke and accomplished by means of force and fear, are fully set out in said first count.

The second count in formal respects is identical with the first. That portion which is descriptive of the offense is as follows: "That the said Oscar Foster, on or about the 24th day of July, 1924, . . . did wilfully, unlawfully, feloniously and forcibly take from the person, possession and immediate presence of one Mr. Fisher, twenty-three ($23.00) dollars in money, . . . the personal property of said Mr. Fisher, which taking was then and there without the consent of the said Mr. Fisher," etc. [1] The defendant was positively identified by Mrs. Funke, who was forced by him to open the cash register drawer and take the money therefrom and

hand it to him as he stood close by her side, himself occasionally assisting in emptying the money till, as the person who committed the robbery on the night of July 19th. That another lady employee who admitted that she was very badly frightened and extremely nervous while the defendant was in the candy store was unable to identify him as the person who entered the store and committed the crime, would by no means justify this court in reversing the case. We have reviewed the record with care and it is not at all surprising that the jury should have accepted the testimony of Mrs. Funke as against said other employee and the testimony of the alibi witnesses. The testimony of the former, as it appears in the record, is clear, positive, and convincing, and there appears to be no reason why it should not have been given full credit by the jury. On the other hand, said other employee's testimony was badly shaken, if not positively impeached, by a number of witnesses to whom she had made statements inconsistent with her testimony as to whether she was able to say that the defendant was not the person who entered the store as described by Mrs. Funke. Her ability to distinguish human features was greatly weakened when she declared from the witness-chair that she had not before seen the face of the deputy district attorney with whom she had talked the day before she appeared as a witness. The testimony of Mrs. Funke and the witness above referred to was considered by the jury and nothing appears in the record that would cause us to discount the convincing effect that the former testimony must have had upon the minds of the triers of the facts. The mother of the defendant, three brothers, and two sisters were called to support the alibi defense of the accused. We have also scrutinized the testimony of those witnesses. It is quite apparent that the testimony of said witnesses was not sufficient to create a reasonable doubt in the minds of the jury that the defendant was at another place than See's candy store at the time the robbery was committed.

[2] The next point has to do with the court permitting the district attorney to amend the information. Miss Freda Knuebel, an employee in charge of Mr. See's store on the night of July 24, 1924, was the second witness called for the People. She had been under examination but a short time whereupon she testified that the defendant came into the

store, walked up to her and pointed a "gun," which he held in his hand, toward her, and said, "Turn over your money." The witness pointed to the cash register and said: "Over there it is." The defendant, who was then within a foot or so of her, walked over to the till, opened it and took therefrom the amount alleged in the information. At this juncture counsel for the defendant objected to the testimony of the witness on the ground that it did not "tend to establish the allegations of the information" as set out in count two. As the facts were further developed it became clear that it was after the money had been taken from the presence of Miss Knuebel and just as the defendant was about to depart from the candy store that Mr. Fisher, an employee of Mr. See, and from whose possession and immediate presence the money was alleged to have been taken, stepped into the store and was confronted by the defendant in the doorway. The defendant had a "gun" in his hand and said, "Get inside and stay there." Mr. Fisher entered the store and the defendant disappeared into the street. It was these rapidly occurring incidents that caused the confusion in the pleader's mind. The defendant was positively identified by Mr. Fisher, who chanced to be in that particular locality and was drawn into the store by the strangeness of the situation inside. The testimony directed to the second count and which tended to show that the money was taken from the person, possession, and immediate presence of Miss Freda Knuebel was objected to as the second count of the information did not allege the robbery to have been committed in the immediate presence of Miss Knuebel and she was the only person in the store at the time the defendant entered and was engaged in the act of reducing the property to his possession and no third person other than Fisher entered during the time the defendant was by force of arms making good his escape from the immediate place where he had committed the crime and from the immediate presence of the person he had robbed. At the conclusion of the examination of this witness the amendment was allowed against the objection of the defendant in conformity with the evidence taken at the preliminary examination, and the name Freda Knuebel, the person from whose immediate presence the money was taken, was substituted in place of the name "Mr. Fisher." The testimony of the witness Freda Knue-

bel came as no surprise to the defendant as she had testified in the presence of the defendant and his attorney at the preliminary examination substantially as she testified at the trial and Fisher's testimony at said examination also showed, as defendant was fully aware, that Fisher entered the store immediately after the defendant had gained possession of the money as above described. This was substantially admitted by counsel during the discussion between court and counsel immediately prior to the order of the court substituting the name of Miss Knuebel for Fisher. Upon arraignment defendant demurred to the information on both general and special grounds, but made no motion to set aside the second count nor made any objection thereto in any way. Section 954 of the Penal Code authorizes the charging in one information of two or more different offenses connected together in their commission, or different statements of the same offense, or two or more different offenses under separate counts. Section 956 of the Penal Code, with reference to the particular person injured in this class of crimes, provides:

"When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

Direct authority for the amendment of the information is found in the following section of the Penal Code:

"An indictment or information may be amended by the district attorney without leave of court, at any time before the defendant pleads. Such amendment may be made at any time thereafter, in the discretion of the court, where it can be done *without prejudice* to the substantial rights of the defendant. An indictment cannot be amended so as to change the *offense charged,* nor an *information* so as to charge an offense *not shown by the evidence taken at the preliminary examination.* . . . "    (Sec. 1008, Pen. Code.) (Italics supplied.)

That portion of said section 1008 permitting the amendments of indictments and informations was added by amendment in 1911 (Stats. 1911, p. 436). Prior thereto no such authority existed.

Inasmuch as the evidence taken at the preliminary examination showed that the money was taken from the immediate presence and possession of Miss Knuebel the amendment comes within both the letter and spirit of section 1008 of the Penal Code, and violates no constitutional inhibition. Said section impliedly recognizes a natural distinction between an indictment, which is found by an official body known as a grand jury and presented in open court—preserving to this day at least some remnants of the ancient forms that obtained under the common-law procedure—and an information which is an accusatory paper filed by a district attorney after preliminary examination had before a magistrate. There exist substantial reasons for placing a different limitation upon the power to amend an indictment than should be placed upon the power to amend an information. A grand jury is a distinctive, inquisitorial body which exists for a limited time and no one may act for it after it has completed its service. Its sessions are secretly conducted and the person whose acts are under investigation by it may have no official knowledge that he is the subject of investigation nor does he know who his accusers were or what they have testified to until after the indictment has been returned against him. In short, the accused has not had his day in court so far as the preliminary proceedings are concerned. The right of the accused to be informed of the evidence taken before the grand jury, even after indictment found, is a modern statutory innovation of the ancient rule. In no case is the accused privileged to be confronted by his accusers. Indeed, he may not appear before the grand jury or produce witnesses in his own behalf as a matter of right. The procedure by information is quite different. The accused, before any proceedings are had against him in the magistrate's court, must be fully informed of his right to be represented by counsel at every stage of the proceeding and he is entitled to compel the attendance of witnesses and he is also privileged to appear as a witness in his own behalf. All proceedings must be had in his presence. The evidence, which must be sufficient to support the information, is adduced in the presence and hearing of the accused and furnishes the authority for the commitment and the filing of the information. [3] The procedure by indictment and information are so vastly different as to

justify the distinction observed by section 1008 of the Penal
Code, which prohibits the amendment of an indictment in
such form as to change the offense charged therein and per-
mits the amendment of an information so long as the crime
stated by the amendment is supported by the evidence which
was taken at the preliminary examination. By pursuing
this course the due process clauses of the federal and state
constitutions are not violated by such an amendment for
the reason that the defendant was present and was given
an opportunity to defend himself throughout the entire pro-
ceedings. (*Hurtado* v. *California,* 110 U. S. 516 [28 L. Ed.
232, 4 Sup. Ct. Rep. 111, see, also, Rose's U. S. Notes].)

[4] Under our system of criminal procedure the com-
mitting magistrate is not limited in making his order of
commitment to the allegations of the complaint or the
crime named therein. It is his duty to commit the accused
for trial for the offense disclosed by the evidence, even
though it be a different offense than the one laid in the
complaint. (Sec. 872, Pen. Code; *People* v. *Lee Look,* 143
Cal. 216 [76 Pac. 1028]; 14 Cal. Jur. 28, 29.) In this case the
accused was held to answer to the charge of robbery com-
mitted in the county of Los Angeles on a stated day; the
kind of property taken is described as money and the amount
thereof was $23. The crime charged in the complaint and
found by the magistrate to have been committed by the de-
fendant was *robbery,* with the time, place, and amount of
money taken specifically stated. Treating the crime as com-
pleted, and not as continuing at the time of the arrival
of Mr. Fisher, the court was of the opinion that the amend-
ment should be made. If no constitutional right of personal
liberty is violated by amended section 1008 of the Penal
Code—and we are not aware of such violation nor have
we been cited to any authority in this state which challenges
the authority of the legislature to so regulate criminal pro-
cedure—all of the objections made by appellant as to the
identity of the crime are swept aside by the amendment.

[5] Conceding that the district attorney by virtue of
section 809 of the Penal Code is confined to the same crime
in framing the information as the one designated by the
magistrate in the commitment, such an exaction would not
strip the legislature of the power to authorize the correction
of an error by an amendment of the information so as to

correctly identify the person who was actually injured by the robbery if the evidence taken at the preliminary examination justifies the amendment. The whole system of procedure by information is subject to control and regulation by the legislature.

But let us consider the crime as referable solely to section 956 of the Penal Code. The person injured is *not material* if the crime is described in the information with sufficient certainty as to identify the *act*. The act or crime of robbery as described by the information was committed by the defendant on the twenty-fourth day of July, 1924, in the county of Los Angeles, and the amount of money taken by means of force and fear by the defendant was alleged to be the sum of $23, the exact amount which was proved at the trial to have been taken by the defendant by means of force and fear. **[6]** The only way by which any uncertainty could arise as to the identity of the crime charged would be to indulge the probability that the *defendant* on the day named in the information committed another robbery and took from said other person robbed exactly the same sum of money that he took from Miss Knuebel. But this presumption may not be indulged. Criminal acts are never to be presumed or indulged against a person, but must be proved and the proof of the robbery alleged would not give rise to a presumption that another robbery had been committed by the defendant.

**[7]** There seems to be no room for doubt as to the object sought to be effected by the adoption of section 956. Said section declares in plain terms that "an erroneous allegation as to the *person injured* is not material," if the "offense is described with sufficient certainty in other respects to identify the act." This language does not mean that the error which will be held to be immaterial is referable only to a mistake as to the *name* or a misdescription of the person injured, and therefore not referable to mistake as to the *person injured,* as expressly provided by the statute, and no case in this state so holds. If that is what the legislature intended, it would have provided that an erroneous allegation *as to the name* of the person injured is not material. To so interpret the statute would be to arbitrarily change its language and meaning and render the law impotent to prevent a miscarriage of justice in cases

where the commission of the crime is established and the accused identified as the person who committed it, merely because the information alleged the ownership of the property stolen to be in one person and the proofs showed it to be legally in another. In the instant case the examination of the defendant before the magistrate, as well as the testimony at the trial, identified the offense as being the *same offense* in each proceeding, to wit, *robbery* committed by the defendant.

[8] We think the amendment as made to section 1008 of the Penal Code in 1911 is quite persuasive, if not entirely convincing, as to the intention of the legislature to permit, in the discretion of the trial court, the amendment of informations, where it can be done without substantial prejudice to the rights of the defendant, so as to correctly state the offense shown by the evidence taken at the preliminary examination. Surely a substitution of the person actually injured in the place of the one who was not injured so far as the loss of property is concerned, but who was actually present and held in fear during a portion of the time when the injured person was held under duress by the defendant, could not be said to be prejudicial to the substantial rights of the defendant. If, as contended, amendments only may be made to the indictment or information to correct an error or misdescription as to *name,* the amendment of section 1008 of the Penal Code was absolutely purposeless, as this has always been allowable. Prior to the statute authorizing *amendments* to be made to informations, it was the settled law of this state, as shown by a long line of decisions, that a mistake or misdescription of the *name* of the person or corporation or firm injured was not a material matter (sec. 956, Pen. Code), and objections made thereto upon the grounds of variance were uniformly overruled. (*People* v. *Smith,* 112 Cal. 333 [44 Pac. 663] ; *People* v. *Nunley,* 142 Cal. 105 [75 Pac. 676] ; *People* v. *Watson,* 72 Cal. 402 [14 Pac. 97] ; *People* v. *Anderson,* 80 Cal. 205 [22 Pac. 139] ; *People* v. *Olsen,* 64 Cal. App. 126 [220 Pac. 444] ; *People* v. *White,* 47 Cal. App. 400 [190 Pac. 821] ; *People* v. *Hinshaw,* 194 Cal. 1 [227 Pac. 156] ; *People* v. *Grahle,* 67 Cal. App. 183 [227 Pac. 227] ; 14 Cal. Jur. 91–93.) In a number of the foregoing cases and in many others that might be cited the name of the person or the description of the cor-

poration alleged in the indictment or information to have been injured was so radically different from the person or corporation shown by the evidence to have been injured as to have furnished no definite information to the accused that the person charged to have been injured and the one actually injured were the same person, corporation, or firm. Under the settled state of the law there was no occasion for further legislation on a question which had been definitely settled both by statute and by decisions of the courts of this state. Decisions in other jurisdictions have been called to our attention as authority for appellant's contention, but upon an examination of the decisions cited it will be found that they are based upon the nonexistence of statutory authority or statutes dissimilar to our own or upon the consideration of questions wholly different from the question presented to us for consideration under our statute. In practically all of the cases relied upon by appellant the amendment was made to an *indictment* as to a substantial matter, or if to an information, the statutory right to amend, if it existed at all, was less comprehensive than our own. in *Webb* v. *State* (Okl. Cr.), [224 Pac. 991], the defendant was charged with maintaining a nuisance at a place designated as No. 918 North Broadway, Oklahoma City, by keeping a place where intoxicating liquors were bartered, sold, and given away, and where persons were permitted to congregate for the purpose of buying and drinking liquor. The proof at the trial showed that the defendant was in charge of a hidden whisky plant in the second story rooms at No. 718½ North Broadway, and the county attorney was permitted to amend the information with respect to the place where the nuisance was maintained under a statute which provided that an information might be amended in matters of substance or in form at any time before the defendant pleads, and may be amended after plea on order of the court, where the same can be done without material prejudice to the rights of the defendant, and while the court there held that an information could not be amended as to a matter of substance, it nevertheless held that the amendment concerning the place where the nuisance was committed was as to a matter of form and not a matter of substance and upheld the conviction. It will be observed, however, that there was no provision in the Oklahoma statute, as in ours, author-

izing the filing of an information based upon the evidence taken before the magistrate at the preliminary examination.

While there is no prior decision of this court involving the precise facts as those presented by the instant case, the cases of *People* v. *Anderson,* 80 Cal. 205 [22 Pac. 139]; *People* v. *Grahle, supra,* and other decisions cited tend to establish the only interpretation which we think can be placed upon sections 956 and 1008 of the Penal Code, and which we have here discussed. There is certainly no authority in this state holding or pointing to a contrary conclusion. If what we have said as to the right of the district attorney to amend the information in the discretion of the court be sound, then the further question as to the identity of the defendant with the crime is rendered immaterial, as the amended information sufficiently described the offense as having been committed in the presence of the person from whose custody and possession the money was actually taken. [9] Nevertheless, as the defendant has made the contention that the identity of the crime places him in a position where he could not defend himself against a second charge based upon the same offense, we will consider his objections as made under section 956 alone and without reference to 1008. The information in the case of *People* v. *Faust,* 113 Cal. 172 [45 Pac. 261], decided many years before the amendment of section 1008, was much more vulnerable to attack on the ground that the information did not sufficiently identify the offense than the information first filed in the present case. The defendant in that case was charged under the provisions of section 397 of the Penal Code, which made it a felony to furnish or supply intoxicating liquors to any Indian. Faust was charged by the information filed against him with the crime of selling liquors to *two Indians,* neither of whom was described by name or in any way other than "two Indians." The same objection was made in that case as is made here as to the sufficiency of the identity. This court there held that if the defendant should again be prosecuted for the offense of which he stood convicted, he might plead the conviction and establish the identity of the offense by parol evidence. So here, if any question should hereafter arise as to the identity of the person robbed, the defendant could show beyond the peradventure of a doubt, both by parol evidence

and by the record in the case, including the information, the evidence and the minutes of the court that the person whom the defendant was charged and convicted of robbing on the said twenty-fourth day of July, 1924, of the sum of $23, was Miss Knuebel and not Fisher, and all danger of being placed twice in jeopardy would be averted. Other authorities to the same effect touching the question of the plea and defense of jeopardy are commonplace in our reports.

[10] Appellant, assuming the invalidity of the second count of the information for the reasons assigned, argues that a reversal of the judgment of conviction should be had under the first count for the reason that the evidence offered in support of said assumed void count must have had a prejudicial effect upon the minds of the jurors and influenced them to the defendant's injury in their consideration of said valid count. But error cannot be presumed and it cannot be said that a jury would permit the evidence addressed to a count that failed to influence it in the consideration of another and separate count. If appellant's reasoning be sound, section 954 of the Penal Code, which is the authority for the procedure adopted in the instant case, would be rendered fatal to the People in every case. The same argument as to the prejudicial effect of the offer of testimony to establish any one of the counts upon the minds of the jurors with respect to the other separate counts could be made with equal force whether the defendant be convicted on *all* the counts, or whether he be convicted on one or more and found not guilty on one or more. The People cannot properly be charged with bad faith by charging the defendant with two different offenses, as the evidence amply justifies its action. With bad faith removed as an element of consideration, the fact that a jury should acquit a defendant of an offense charged in one count could not be urged as a reason for vitiating a verdict of guilty found under another count, if it be sufficiently supported by legal evidence. We think there is no substantial merit in the contention of appellant as to legal prejudice suffered by reason of the proof offered to sustain the second count. This form of pleading is authorized by statute. (*In re Kinney,* 71 Cal. App. 490 [235 Pac. 460].)

[11] But one other question remains for decision which arises out of the court's refusal to give the whole of the

alibi instruction offered by the defendant. The first paragraph of the following instruction was given, but the portion inclosed within parentheses was refused as not being a correct statement of the law:

"The defendant in this case has introduced evidence to prove the fact that he was not at the place where the crimes were alleged to have been committed, at the time charged, and if in your deliberations you determine that defendant was not at the place where the offenses are said to have been committed, at the time alleged, but was at another place, then under this state of facts you must find the defendant not guilty, for it is impossible for the same person to be in two different places at the same time. (The defendant is not required to prove this fact beyond all reasonable doubt, or even by a preponderance of the evidence, to entitle him to an acquittal, but it is sufficient if, after hearing all the evidence *introduced upon this subject by the defendant,* you have a reasonable doubt of his presence at the time and place where the commission of the crime is charged, and if it does, you must give the defendant the benefit of this doubt, and find him not guilty.)" (Italics supplied.)

The portion refused was properly rejected. The law is well settled that while an alibi is not a separate or affirmative defense, the jury is not restricted or limited in its consideration of the case to the alibi defense alone, but is to consider that question in connection with all other evidence in the case. It is true that the alibi evidence may be so persuasive as to raise a reasonable doubt as to the guilt of the defendant as against all the other evidence produced against him, but it is the duty of the jury, nevertheless, to consider all the evidence offered in the case and it should be so instructed. (*McClain* v. *State,* 182 Ala. 67 [62 South. 241]; *Flanagan* v. *People,* 214 Ill. 170 [73 N. E. 347].) [12] The court having properly refused to give the erroneous portion of said alibi instruction, the question arises whether it committed prejudicial error by failing of its own motion to instruct the jury that the burden was not upon the defendant to establish an alibi by a preponderance of the evidence, but that it was sufficient to entitle the defendant to an acquittal if the evidence of alibi, considered in connection with all the evidence

in the case, raised in the minds of the jury a reasonable doubt as to defendant's guilt. The court did, by giving the sound portion of the instruction, specifically call the attention of the jury to the defense of alibi and told them that it was impossible for the defendant to be "in two different places at the same time." It also instructed the jury fully as to its duty if any member thereof should entertain a reasonable doubt as to the guilt of the defendant upon the whole case presented, and, further, that *every material* fact in the case must be proved beyond a reasonable doubt; that, considering the evidence as a whole, if it was susceptible of two reasonable interpretations, "one looking towards guilt and the other towards the innocence of the defendant, it was their duty to give such facts and evidence the interpretation which makes for the innocence of the defendant"; further, that if the facts and circumstances of the case could be reasonably construed as establishing the innocence of the defendant, or as raising a reasonable doubt of his guilt, it was the jury's duty to so construe the evidence. In the light of the instructions given it seems almost incredible that the defendant could have been prejudiced by a failure of the court to instruct upon a subject which doubtless it would have instructed upon had it been furnished with a correct statement of the law with respect thereto. While it should be the practice of courts to instruct the jury that the burden is not upon the defendant to establish the defense of alibi by a preponderance of the evidence, and that it must acquit if the alibi evidence is sufficient, upon a consideration of the whole case, to produce a reasonable doubt as to his guilt, we cannot say that prejudicial error was suffered by the defendant in the light of the proceedings in the instant case.

The judgment and order appealed from are affirmed.

Richards, J., Shenk, J., Waste, C. J., and Lawlor, J., concurred.