[Crim. No. 11. Fourth Appellate District.—March 10, 1930.]

THE PEOPLE, Respondent, v. JAMES GALLOWAY, Appellant.

424

Millspaugh & Smith for Appellant.

U. S. Webb, Attorney-General, John D. Richer, Deputy Attorney-General, Leroy McCormick, District Attorney, and W. G. Machetanz, Deputy District Attorney, for Respondent.

BARNARD, J.—This is an appeal from the judgments in two separate cases, which were consolidated and tried before the same jury. In each case the defendant was charged with assault with a deadly weapon with intent to commit murder, and in each case he was convicted of assault with a deadly weapon.

In the first case, the defendant was charged with making an assault upon one Fred Raynor, the uncontradicted evidence showing that said defendant appeared at a fruit packing-house in Lindsay, California, where the said Raynor was at work; that Raynor heard his name called and looking up observed the defendant within eight or ten feet of him, and with a 22-caliber revolver pointed at him; and that Raynor immediately dropped down behind a truck, just as the defendant fired at him. Raynor testifies that he did not know the defendant was looking for him, and knew of no reason why he should shoot at him. The evidence also shows that while the defendant was being held, awaiting the arrival of an officer, he said he "wanted to kill the son-of-a-bitch." While he was being led away by the officer he stated that he "wanted to go back and get the sucker."

The uncontradicted evidence in the other case shows that on the day following the preliminary examination in the first case, the prosecuting witness, Raynor, entered a clothing store in Exeter, California, for the purpose of making a purchase. While Raynor was following the clerk to the hat-rack, he observed the defendant just inside the door, coming at him with a knife in his hand. Raynor ran around the hat-rack and attempted to escape, but the defendant pursued him and caught him at the door. Raynor felt the knife in his back and fell to the floor. The defendant placed himself astride him and stabbed and cut him in twenty-eight separate places, five of which stab wounds penetrated the pleural cavity.

 The first assignment of error is, that the court erred in ruling out all evidence offered to show the motive or to inquire into the matter of the motive for the alleged crimes. In the case of *People* v. *Durrant*, 116 Cal. 179 [48 Pac. 75, 81], the Supreme Court says:

"In every criminal case, proof of the moving cause is permissible, and oftentimes is valuable; but it is never essential. Where the perpetration of a crime has been brought home to a defendant, the motive for its commission becomes unimportant. Evidence of motive is sometimes of assistance in removing doubt, and completing proof which might otherwise be unsatisfactory, and that motive may either be shown by positive evidence, or gleaned from the facts and surroundings of the act. The motive then becomes a circumstance, but nothing more than a circumstance, to be considered by the jury, and its absence is equally a circumstance in favor of the accused, to be given such weight as it deems proper. But proof of motive is never indispensable to a conviction."

In the present case, the perpetration of the acts charged were brought home to the defendant by abundant evidence, and the motive for the acts was therefore unimportant and immaterial.

 The second assignment of error is thus stated: "That the court erred in excluding all evidence concerning intent of the defendant, except such evidence as related only to the time of the alleged crimes." No evidence was offered by the defendant to show any such intent, and since the jury failed to find the defendant guilty of the specific intent to

murder, the defendant may not complain, and is not prejudiced. What is here objected to is not the question of intent, but the court's ruling as to the showing of provocation.

The third assignment of error is "that the court erred in excluding evidence offered to show legal provocation, and that the acts of which defendant was accused, were done while he was laboring under a heat of passion, reasonably provoked in him by the acts of the prosecuting witness."

These first three assignments of error all go to the refusal of the court to permit the defendant to show certain previous relations between the parties. In one question asked by defendant's counsel, on cross-examination, it was indicated that the defense intended to be shown, was that the prosecuting witness was keeping company with defendant's wife. In the absence of the jury, the court asked defendant's counsel to state the nature of their defense. This defense was thus stated: "The defense proposes to show that there was a provocation here that extended over a period of two or three years, a deliberate scheming attempt to break up a man's home and ruin his happiness, such a one as would practically dethrone any reasonable man's reason." While the argument is made that the matters sought to be introduced in evidence were admissible, as going to the intent and the motive, it is apparent that their admission was sought for the purpose of showing provocation. The unlawful act having been brought home to the defendant in both cases, the law presumes an unlawful intent sufficient to comply with the requirement of section 20 of the Penal Code. (Sec. 1963, subd. 2, Code Civ. Proc.) Under such circumstances, as was pointed out in *People* v. *Durrant, supra,* the motive is unimportant and immaterial. Even when the motive is material, the past relations of the parties may not be gone into with the purpose of showing which party was in the right. (*People* v. *Yokum,* 118 Cal. 437 [50 Pac. 686] ; *People* v. *Colvin,* 118 Cal. 349 [50 Pac. 539] ; *People* v. *Conkling,* 111 Cal. 616 [44 Pac. 314] ; *People* v. *Thomson,* 92 Cal. 506 [28 Pac. 589].) The introduction of this evidence was sought, not to show motive as claimed, but to show what the defendant terms a "legal provocation." The circumstances here sought to be shown as a defense did not constitute a legal provocation. The law does not recog-

nize the right of any person to avenge his wrongs by shooting and stabbing. In cases of homicide, by special statute, where the crime is committed under sufficient heat of passion, the offense is reduced from murder to manslaughter. It may also be conceded that under certain circumstances such evidence might, under a plea of ''not guilty by reason of insanity,'' be admissible for the purpose of showing its effect upon the mind and reason of the defendant. There is, however, no legal provocation in the sense here contended for. ██ The defendant was here being tried under pleas of ''not guilty,'' and whether or not there was heat of passion, makes no difference. The admission of the evidence in question was properly refused by the trial court. While any extenuating circumstances might properly be considered by the judge in pronouncing sentence, an individual may not thus take the law into his own hands.

██ The next assignment of error is, that the court erred in refusing to permit the impeachment of the prosecuting witness. Upon cross-examination the prosecuting witness was asked, ''Haven't you, as a matter of fact, Mr. Raynor, heard from several sources that Mr. Galloway was likely to go after you because you were chasing around with his wife?'' And also, ''Had you ever busied yourself during that time to find out what Mr. Galloway's activities were?'' The court sustained objections to both of these questions as being incompetent, irrelevant and immaterial. Defendant says in his brief that these questions had to do with inconsistent statements made by the prosecuting witness at the preliminary hearing, the subject matter being the relations of the prosecuting witness with the wife of the defendant. This was plainly an attempt to impeach the witness on an immaterial matter. Not only that, but the record shows no foundation was laid, and no attempt was made to lay a foundation. The witness was neither asked whether he had at other times made statements inconsistent with his testimony on direct examination, nor was any purported transcript or purported copy of any such statement shown him.

██ As a part of his own case the defendant called the prosecuting witness to the stand, as his own witness. Counsel started to interrogate him as to the matters just referred to. The court sustained the objection on the ground that

he could not impeach his own witness. Under section 2049 of the Code of Civil Procedure this ruling was error, but this can be of no avail to defendant, for the reason that it was an attempt to impeach the witness on an immaterial matter, and that no foundation was laid or attempted to be laid, in accordance with section 2052 of the Code of Civil Procedure. The real objection of the defendant to these rulings, in connection with his attempt to impeach the prosecuting witness, is his contention that he had a right to go into the matters referred to in the above specifications of error. The uncontradicted evidence shows that the witness had, in fact, been assaulted, and whether he knew why he had been assaulted, or what he had heard from other people in reference to the matter, was of no materiality. The evidence shows the prosecuting witness had not seen the defendant for between two and three years, and there was no evidence of any threats on the part of the prosecuting witness toward the defendant, and the matters sought to be brought out were incompetent and immaterial.

Appellant next contends that the court erred in refusing to give an instruction requested by him, which contained the following paragraph: ''The doctrine of reasonable doubt goes not only to the whole evidence, but equally to every material issue, and if, after a review of all the evidence, including that of the defendant, if any, then if you entertain a reasonable doubt upon any one material issue, it is your duty to give the defendant the benefit of the doubt and acquit him'' The court read to the jury section 1096 of the Penal Code, and under section 1096a of the same code, no further instruction upon that subject need be given.

It is next claimed the court erred in refusing to give the following instruction:

''You are instructed that if you find as a fact that the defendant committed the acts complained of in the information herein while in the heat of passion reasonably provoked in him by the conduct of the prosecuting witness, said Fred Raynor, you must not find the defendant guilty of the charge laid in the foundation. The degree of such passion need only to be such as to render the mind of the defendant incapable of cool reflection and self control. It need not have been such that knowledge or volition were

destroyed or reason was dethroned. Such passion must have existed at the time of the commission of the act or acts complained of, and it is your duty to determine whether or not such passion did exist, taking into consideration all the circumstances of this particular case, which include the nature of the defendant and the laws of the human mind as well as the nature and the circumstances of the provocation, the extent to which the passions were aroused, and the nature of the act or acts causing the provocation.''

Not only was this an attempt to secure an instruction, based upon immaterial matters which were properly excluded from evidence, but the instruction itself is a compilation of various excerpts from the law relating to manslaughter, taken out of their context, not applicable to the facts in this case, and the same was properly refused.

 The next assignment of error is, that the court refused to give an instruction requested by the defendant to the effect that the jury might find the defendant guilty of simple assault. The argument is made that the charge of assault with a deadly weapon with intent to commit murder, necessarily includes the lesser offense of simple assault. Appellant relies upon section 1159 of the Penal Code, which provides that the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged. Under the charge here, the intention with which the assault was committed was a material fact, to be determined by the jury. (*People* v. *Fine,* 53 Cal. 263.) While the evidence would have been sufficient to sustain a conviction upon the original charge of assault with a deadly weapon with intent to commit murder, the jury has by its verdict, found that the defendant did not actually intend to commit murder. It does not follow, however, that the jury should have been permitted to find a verdict of simple assault. Where the evidence is such that a verdict of manslaughter cannot legally be found, it has been held not error to fail to instruct as to manslaughter. (*People* v. *Turley,* 50 Cal. 469; *People* v. *Fellows,* 122 Cal. 233 [54 Pac. 830]; *People* v. *Di Donato,* 90 Cal. App. 366 [265 Pac. 978].) In *People* v. *Rogers,* 163 Cal. 476 [126 Pac. 143, 145], the court says: ''It is thoroughly established in this state that it is proper to refuse to instruct a jury as to a lesser offense or degree

included within the offense charged, where the evidence is of such a nature as to warrant, in the event the defendant is guilty at all, only a verdict for the higher offense or degree.'' The uncontradicted evidence in these cases shows the defendant was at least guilty of assault with a deadly weapon, in each case, if he was guilty of any offense whatever. In each case the assault was without warning. In the first case the possession of the pistol, the use of the pistol and the intention to so use it, are clearly shown by the uncontradicted evidence, including the statements of the defendant. In the case of the assault with the pocket knife, the evidence shows that the defendant was armed with a knife with a blade three inches long; that he pursued his victim until he caught him and, having knocked him to the floor, got astride him and repeatedly stabbed him, inflicting twenty-eight separate wounds, five of which penetrated the lung; and that he did not desist until he was pulled off by an officer. In each case, the nature of the weapon used, and the manner of its use, leave no question that the means of assault used in each instance, constituted a ''deadly weapon.'' We think this evidence did not warrant a verdict of ''guilty of simple assault,'' and the requested instruction could be based only upon the assumption that the jury would not do its duty. To have so instructed the jury would have authorized them to find a verdict not in accordance with the evidence.

Defendant's last assignment of error is that the court erred in imposing the maximum sentence upon each conviction, thinking that such sentences would run concurrently, when, as a matter of law, such sentences will have to be served consecutively. In each of the two cases the defendant was sentenced to imprisonment in the state prison. Appellant says in his brief, that after passing sentence in each case, the court stated he was of the opinion that such sentences would run concurrently and that the district attorney pointed out that such sentences would run consecutively. There is nothing in the record to show these facts, and nothing to show that the sentences did not represent the intention of the court at the time of imposing sentence. The record shows no objection was made at the time and if it appeared that the sentence did not represent the court's intention at the time, this matter should have

been called to the attention of the trial court. It appears, however, from counsel's statement, that after the law was called to the court's attention by the district attorney, no change in the sentences was made by the trial judge. It must be presumed that the sentences were in accord with the court's intentions.

No prejudicial error being shown, the judgments in both cases are affirmed.

Sloane, P. J., and Marks, J., concurred.