[Crim. No. 2003. Third Dist. Oct. 31, 1947.]

THE PEOPLE, Respondent, v. EARL WALKER, Appellant.

Melvin M. Belli, Dewin T. Wilson, Berry D. Brown and John Shortridge for Appellant.

Fred N. Howser, Attorney General, and Ruth Bernfeld, Deputy Attorney General, for Respondent.

PEEK, J.—By an information defendant originally was charged (1) with the crime of assault with intent to commit murder, and (2) with the crime of robbery. To each count he pleaded not guilty and subsequently moved to change his plea to not guilty and not guilty by reason of insanity. At the conclusion of the trial and prior to submission of the case to the jury, the court, on its own motion, ordered the district attorney to file an amended information as to count one so as to charge the defendant with assault with a deadly weapon with intent to commit murder. The jury found him guilty of assault as charged in count one as amended and guilty of grand theft under the charge of robbery as set forth in count two. Thereafter defendant withdrew his plea of not guilty by reason of insanity and the court sentenced him on each count as provided by law, the sentences to run concurrently.

Defendant by his statement to police officers and his testimony at the time of the trial, admitted obtaining a ride in a car operated by one William Wise, apparently on the pretext that defendant's wife was at a hospital expecting the birth

of a child; that during the course of the ride and at defendant's request and upon his statement that he had lost his bearings, the car was stopped; that after alighting from the car defendant drew a gun, shot Wise and thereafter drove off in the victim's car. Defendant further stated he could give no reason for his acts other than that he had been drinking heavily during the afternoon and evening of the crime, nor could he account for having told Wise that his wife was about to have a baby, as he was not married. Furthermore, he could not understand why he had shot the victim as Wise appeared to him to be a good person and he had no intent to kill him. The only reason he gave for taking the car was that he became frightened after he realized he had shot and injured Wise.

In support of his first contention that the trial court abused its discretion in ordering the information amended, appellant argues that said amendment was in excess of the scope and purpose of section 1008 of the Penal Code in that under the first count of the first amended information, which merely charged an assault with intent to commit murder, the jury, guided by proper instructions, could have found him guilty of simple assault, but by the second amended information, which charged assault with a deadly weapon with intent to commit murder, and the instructions actually given, the jury was given no alternative but to find him guilty of assault with a deadly weapon.

Nowhere in the record is there a denial that a deadly weapon was used. In fact, defendant himself identified the gun and testified as to its ownership, possession and use. He does not contend, nor could he, that the evidence was insufficient to support the conviction of assault with a deadly weapon. It is readily apparent in the light of the evidence so produced, including the admissions and testimony of the defendant himself, that the crime of simple assault was not involved. If he was guilty at all he was guilty of the crime of assault with a deadly weapon. (*People* v. *McCoy*, 25 Cal.2d 177, 187, 194 [153 P.2d 315] ; *People* v. *Lopez*, 135 Cal. 23, 25 [66 P. 965].) Therefore, the amendment to the information ordered by the trial judge merely conformed to the proof. From the wording of said section 1008 of the Penal Code this would seem to be one of the clear purposes thereof, if such an amendment can be accomplished without prejudice to the substantial rights of the defendant. (*People* v. *Clawson*, 82 Cal.App. 422 [255 P. 552].) Here the evidence relative to the use of a gun in the shooting of the victim first appeared

at the preliminary hearing and was both admissible and admitted under the first amended information. The situation so presented is quite comparable to that in the case of *People* v. *Foster,* 198 Cal. 112 [243 P. 667]. There, as here, the amendment was made after the introduction of evidence and over the objection of the defendant. On appeal the Supreme Court held that as the amended information did not charge an offense different from that shown by the evidence taken at the preliminary examination and because such amendment did not prejudice the substantial rights of the defendant it was not error for the trial court to amend the information. Unlike an indictment, an information may be amended under Penal Code, section 1008, so as to charge an additional or different offense, supported by evidence adduced at the preliminary examination. (*People* v. *Tallman,* 27 Cal.2d 209 [163 P.2d 857]; *People* v. *Foster, supra; People* v. *Shutler,* 15 Cal.App.2d 704 [59 P.2d 1050].)

Appellant's second contention, that the trial court erred in failing to give the instruction on simple assault offered by him, is likewise without merit. As previously stated, the record is clear and uncontradicted that a deadly weapon was used and that the party assailed was actually shot by the weapon so used. Under such circumstances it is self-evident that if the defendant was guilty at all he was guilty of the higher offense as alleged in the amended information. Here the court permitted appellant to offer additional instructions to the jury covering the charge of assault with a deadly weapon, and such instructions were given. Since there could be no justification for expecting a verdict of simple assault under the evidence it cannot be said that the court erred in refusing to give the proffered instruction. (*People* v. *McCoy, supra; People* v. *Lopez, supra; People* v. *Galloway,* 104 Cal. App. 422, 429 [286 P. 476].)

The appellant's third contention is that the court exceeded the spirit and purpose of the Youth Authority Act in sentencing him to imprisonment in the state penitentiary in that at the time of the commission of the crimes he was 17 years of age and at the time of sentencing was only 18.

The pertinent provisions of the Youth Authority Act relative to referral as they existed at the time of sentencing of the defendant, are found in section 1731.5 of the Welfare and Institutions Code, which provided:

"After certification to the Governor as provided in this article and until January 1, 1948, a court *may* refer to the

Authority any person convicted of a public offense who comes within all of the following description:

"(a)  Is found to be less than 21 years of age at the time of apprehension;

"(b)  Is not sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment;

"(c)  Is not granted probation.

"If the Authority believes that any person referred to it as provided in this section can be materially benefitted by the procedure and discipline of the Authority, and that proper and adequate facilities exist for the care of such person, it shall so certify to the court. The court shall thereupon commit said person to the Authority." (Italics ours.)

And section 1732 of the same code, which provided that:

"Except as otherwise provided in this chapter the court *shall* commit to the Authority every person convicted of a public offense after January 1, 1948, who

"(a)  Is found to be less than 21 years of age at the time of apprehension, and

"(b)  Is not sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine or who, after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment, and

"(c)  Is not granted probation." (Italics ours.)

It is apparent from the history of the act and from the amendments which, from time to time, have been passed, that it was the intent of the Legislature that ultimately all persons coming within the provisions thereof should be referred to the Authority.

At the outset of its enactment (Stats. 1941, ch. 939, p. 2526), after the Authority had certified to the governor that it had the proper facilities and personnel for the discharge of its duties thereunder and until January 1, 1944, commitments to the Authority of all persons under the age of 23 years was mandatory under both sections 1731.5 and 1732. Thereafter, by the statutes of 1943, chapter 236, page 1147, the date of January 1, 1944, was extended to January 1, 1946, the substantive provisions remaining the same. By chapter 2, sections 5 and 6, page 22 of the statutes of the Third Extra Session of 1944, the age of the persons included

within said sections 1731.5 and 1732 was reduced from 23 years to 21 years; otherwise the sections remained the same. This was followed by the statutes of 1945, chapter 779, sections 1 and 2, which changed the mandatory provision of said section 1731.5 to permissive. Section 1732 was not amended except to advance the date to January 1, 1948. In other words, until January 1, 1948, referrals to the Authority were to be within the discretion of the trial court, but after said date commitments would become mandatory with respect to all persons coming within the classifications therein set forth. In its last session [1947] the Legislature reenacted the same provisions in both sections but extended the mandatory provisions of section 1732 to January 1, 1950.

Thus it appears that originally it was, and from the sequence of amendments thereto still is, the intent of the Legislature that ultimately all youthful offenders, except as otherwise provided in said section, should be referred to the Youth Authority. This general policy is in accord with the expressed intent of the Legislature, as set forth in the statement of purpose in section 1700 of the act as originally adopted, as follows:

''The purpose of this chapter is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses. To this end it is the intent of the Legislature that the chapter be liberally interpreted in conformity with its declared purpose.''

Although it would seem that defendant should have been referred to the Authority the record does not support his contention that the trial court overlooked the purpose and intent of said act. To the contrary, it appears from the comment of the trial judge, at the time sentence was pronounced, that he was particularly cognizant of the purpose of the act, but by reason of a misunderstanding of the provisions thereof was convinced that he was compelled to sentence defendant to a state prison.

■ The record in this regard shows that at the time of sentence the court stated that ''upon the testimony of these two . . . [psychiatrists] on the subject of insanity, that their opinion that the defendant is legally sane and has been at all times, should govern the court. . . . The question of his being influenced or governed in what he did on the day in

question by liquor cannot govern this court, and accordingly it will be necessary for the Court in the interest of justice and on the duty of the court to sentence this defendant to State Prison as provided by law, and not to commit him to the Youth Authority.'' The court further observed that in addition to the testimony of the two doctors it had in mind ''the law of the State of California, which is plain, positive and controlling on this Court, that intoxication can be no excuse for the commission of crime; that the only reason that evidence of intoxication may be received by a jury is upon the question of intent, . . .''

In summary, the court stated that because of the psychitrists' ''conclusion of his [the defendant's] legal sanity and on the question of intoxication as influencing his judgment, more or less, the Court, I say, must now deny its own inclination to send this defendant of tender years to the Youth Authority, but to send him to State Prison.''

It therefore appears that although the trial judge felt, and properly so, that the defendant definitely came within the provisions of the act, nevertheless because of the reasons stated and in particular the defendant's sanity, he believed that under the circumstances he had no discretion but to send the defendant to a state prison.

The issues as to defendant's sanity and the effect of his intoxication at the time of the commission of the acts relate only to the question of his guilt or innocence of the crimes with which he was charged. Obviously, the mere question of whether or not the defendant is sane, or the question of his guilt can have no bearing upon whether or not he is a proper subject for rehabilitation. It thus appears that the trial court in passing upon the defendant's request for referral to the Youth Authority, failed to apply proper criteria in the attempted exercise of his discretion. For this reason the cause should be remanded to the trial court in order that such discretion may be exercised on the basis of the defendant's youth and his ability to profit by a commitment to the Authority. ■ In any event, the final determination as to whether or not the defendant is a proper subject for commitment to the Youth Authority will lie with that body and not with the trial court. For this reason a trial court should not be too hesitant in referring a youthful offender to the Authority in accordance with the stated purpose of the act; particularly is this true where, as here, there is any possibility

that he may be found to be a proper subject for commitment thereto.

For the foregoing reasons the judgment insofar as the conviction of the crimes charged is concerned is affirmed; however, that portion of the judgment sentencing the defendant to the state prison is reversed and the cause is remanded to the trial court in order that it may reconsider the defendant's request for referral to the Youth Authority and exercise its discretion in accordance with the views herein expressed.

Adams, P. J., and Thompson, J., concurred.